|,VICTORY, J. *
We granted this writ application to review Lionel “Lon” Burns’ (“Burns”) conviction for constructive contempt for pros-ecutorial misconduct for tampering with or planting evidence and for failing to timely notify defense counsel of the existence of the evidence. Having reviewed the record and the applicable law, we find insufficient evidence to convict Burns of constructive contempt for tampering with or planting evidence and reverse his conviction as it relates to that charge; however, we affirm his conviction for failing to timely notify defense counsel of the existence of the evidence.
FACTS AND PROCEDURAL HISTORY
On October 17, 2000, George Lee, a former New Orleans police officer charged with seven counts of forcible rape and five counts of second degree kidnapping, was *835 standing trial for the third time before Judge Arthur Hunter, Jr.[1] Burns was lead 12prosecutor at this third trial and had been second-chair during Lee’s second trial. Two of the rape victims, Delphine Williams and Trinette Clay, had submitted statements to an investigating police officer, Sergeant Ronald Ray, that Lee used napkins to wipe himself after he raped them and police officers found napkins from two of the alleged crime scenes. The prosecution introduced these napkins as evidence in all three trials.
After the third trial had recessed for the day on October 18, 2000, lead prosecutor Burns and prosecutor Keva Landrum were organizing the evidence in the courtroom in preparation for the next day’s proceedings. While examining Lee’s police uniform pants, which had been seized pursuant to a search warrant, Burns allegedly discovered paper napkins in the back pockets of the pants.
During Burns’ direct examination of Sergeant Ray relating to the charge of forcible rape of Trinette Clay, Burns referred him to State’s Exhibit No. 1, which were napkins recovered at the scene of the rape. Ray testified that the officers only collected a random sample of the numerous napkins at the crime scene in hopes of recovering one that Lee had used. Lee gave a statement to Sergeant Ray on August 23, 1999, that he did not sexually assault that victim, but that victim had consented to sex and that the sexual incident did not occur along the City Park bayou, as the victim |3had claimed, but occurred somewhere in the St. Bernard housing project. In her statement to police, that victim denied that it took place in the St. Bernard housing project. On cross-examination by defense counsel, Robert Jenkins, Sergeant Ray stated that the napkins were not submitted for DNA testing because no seminal fluid was found on the napkins. Jenkins asked Sergeant Ray: “Now, other than the testimony of Miss Clay, you have no physical evidence whatsoever to show any type of sexual assault involving Mr. Lee upon her. Is that correct?” Sergeant Ray responded, “We have the uniforms, the napkins, things that we confiscated.”
On redirect, prosecutor Burns held up Lee’s police uniform pants and the following dialogue ensued:
BY MR. BURNS:
*836 Q. Who were those pants seized from?
A. Officer George Lee.
Q. Go in the back pocket of those pants.
MR. JENKINS:
Judge, objection. They may have put anything in there any time over there at that office. Objection.
THE COURT:
Overruled.
BY MR. BURNS:
Q. What are you holding in your hand?
A. Napkins.
Q. Did you check the back pocket of those pants.
A. No, I did not.-
|4BY MR. BURNS:
Nothing further, Judge.
MR. JENKINS:
I just have a couple of questions, Judge.
RE CROSS EXAMINATION BY MR. JENKINS:
Q. Officer, did you check his back pockets to see if he had them first, the napkins?
A. No, I did not.
Q. Okay. And who was in the custody and control of those pants prior to coming into court? Was it the State of Louisiana?
A. State of Louisiana, yeah.
Q. And that would be Mr. Lionel Burns, right?
A. Ah—
Q. “Yes,” or “no”?
A. Perhaps.
Immediately following that testimony, Sergeant Ray was called to the stand to testify about two counts of forcible rape and two counts of second degree kidnapping of Darcel West. During defense counsel’s cross-examination of Sergeant Ray, the following questioning occurred:
MR. JENKINS:
Q. Speaking of that, we’ve gone through several procedures in this matter involving Mr. Lee in terms of a trial and evidence; correct?
A. Correct.
Q. The first time today was the time that you pulled out some pants and they had some napkins in it, correct, his blue pants?
A. This is the first time I pulled the napkins out of the pocket, yes.
IsQ. Yeah. This is the first time it ever came up about napkins in this case. When did Mr. Burns put those — put napkins in that pocket?
A. I don’t know that Mr. Burns put them in the pocket. The napkins came up in previous trials, but we never—
Q. Okay.
MR. BURNS:
Objection. Let him answer the question.
THE WITNESS:
—emptied the pockets.
BY MR. JENKINS:
Q. Those napkins came up in previous trials in his pocket?
[[Image here]]
Q. Did it come up in previous trials that you found napkins in his pocket?
A. In no previous trial did I say or testify to or find napkins in the pockets, but in no previous trial did I look in the pockets of any of the clothing.
[[Image here]]
FURTHER DIRECT EXAMINATION BY MR. BURNS:
Q. Sergeant Ray, in any of those previous trials did any of those D.A.’s *837 ask you to go through those pants pockets?
A. No, they did not.
[[Image here]]
Q. Usually do we normally have you rummage through the pockets? And do we hold them up: Are these the pants? What’s the procedure we do?
A. Normal procedure is just to hold them or maybe give them to me and ask me to identify them but not to go through the pockets.
Q. And are you aware that it is Miss Landrum who raised those pants up and showed that to me to show to you?
A. I’m not sure. I know something was going on at the table, but I don’t know.
|fiQ. Was Miss Landrum here during that first trial with those two people that Mr. Jenkins talked about?
A. I remember seeing her earlier, but the D.A.’s that are not specifically on a case are generally in and out of the court, so I can’t really say at any given time she was or was not here.
Q. Was she on the second trial that you were involved in in this case?
A. I can’t really say.
Q. But she is on this one, and she pointed that out to you; correct?
A. Correct.
Q. And you found them and you presented it to this jury, correct?
A. That’s correct.
According to the trial court’s judgment, the defense requested a mistrial following Sergeant Ray’s testimony. The court suspended and delayed the trial, and, on defendant’s Motion for Contempt alleging that Burns planted the napkins in the pants pocket and further, had an obligation to turn over the napkins to the defense when he discovered them, conducted a “Prosecutory Misconduct Hearing.” The hearing was conducted on October 23, 24, and 25, 2000. As a result of this hearing, the court granted the defendant’s motion to suppress the napkins found in the defendant’s uniform pants, granted the defendant’s motion for mistrial, and ruled that the defendant’s motion for discovery rules violations were moot. The court dismissed defendant’s motion for constructive contempt finding that the defendant lacked standing to bring a motion for constructive contempt under La.C.Cr.P. art. 24(A). However, the trial court, on its own motion, found Burns in constructive contempt and ^sentenced him to six months in Orleans Parish Prison. Defendant Lee’s trial was reset for January 9, 2001.[2]
On October 25, 2000, the state (representing Burns) filed an emergency writ relating to the contempt finding. The Fourth Circuit granted the writ and vacated the contempt order because the mandatory procedure set out in La.C.Cr.P. art. 24[3] had not been followed. On November *838 2, 2000, the trial judge filed a Motion for Constructive Contempt, stating the following:
Pursuant to Louisiana Code of Criminal Procedure Articles 24(A)(B), Lionel Burns is notified and ordered to appear in Section “K” on November 13, 2000 at 9:00 A.M. to answer alleged constructive contempt of court violations, specifically Louisiana Code of Criminal Procedure Article 23(1); prosecution misconduct specifically tampering with and/or planting evidence, and discovery rules violations pursuant to Louisiana Code of Criminal Procedure Article 729.5.
On November 9, 2000, Burns filed a Motion to Recuse the trial judge. On November 17, 2000, the trial judge held the hearing on the motion for constructive | ^contempt, which he continued from November 13, 2000. The trial judge denied Burns’ Motion to Recuse and later that day, the Fourth Circuit denied Burn’s writ application on that issue. The trial judge also allowed Dwight Doskey, who was appearing as counsel for defense attorney Jenkins, to question witnesses “to ask questions concerning the allegations that Defense Counsel raised during the trial.” The trial judge called the witnesses. In the middle of the hearing, when Burns’ attorney objected to Doskey questioning the witnesses, the court overruled the objection stating that for the limited purposes of the hearing, Doskey was representing Lee. Mr. Doskey replied that “I guess for the limited purpose of this hearing at Mr. Jenkins’ request, I represent Mr. Jenkins.... ”
At the November 17, 2000, hearing, Sergeant Ray testified he seized the pants from Lee’s apartment on August 24, 1999, and that he did not recall finding anything in the pockets of the pants that day, but that his normal procedure upon finding evidence is to feel the items, visually inspect them, search pockets or any concealed compartments, and that he generally puts his hands in the pockets. He testified that he remembers feeling the pants but did not remember going into the pockets of the pants. He testified that when he took the pants to Central Evidence, they were in a bag, but were not sealed. He further testified that the bag should have been sealed by Central Evidence and that he thought the bag was still sealed when it was brought to him at the first trial. After that, the bag was always unsealed when it was brought to him at the other trials. When he was recalled to the stand, he testified that the napkins could have been in the pocket when he turned the pants over to Central Evidence, but he did not think he would have missed them.
Sergeant Robert Harrison testified that he assisted Sergeant Ray in collecting evidence at Lee’s apartment and that he remembers shaking the pants and squeezing them to make sure there wasn’t anything in the pockets, but that he did not search | ^inside the pockets. Teresa Thompson, who works for the Evidence and Property *839 Division of the NOPD, testified that she was the technician who received the police uniform. She testified that she didn’t remember the pants in question but that her normal procedure when receiving evidence was to make sure any valuables such as money or jewelry is removed from the pockets and to also look for drugs, sharp objects and guns. She stated that ordinarily the officer will have already gone through the pockets before bringing them to Central Evidence, but that if she does not witness the officer actually going through the pockets, she will do it herself.
Zaren James, a law clerk with the DA’s office, testified that he was in the courtroom the majority of the time on the evening of October 18, 2000, when the evidence was being organized but that he didn’t see Burns find the napkins and he didn’t hear anybody talking about the napkins. Anthony Rovelo, the assistant district attorney assigned to Section “K,” testified that he was in charge of maintaining order of the evidence that was submitted by the state and that he was present in the courtroom for approximately 45 minutes after the proceedings for that day had ended. He testified that he didn’t see Burns find the napkins in the pants pocket and that when he left the courtroom, the pants were inside a bag. Keva Landrum testified that she became involved with the Lee prosecution about three weeks prior to the third trial. She testified that on the evening of October 18, 2000, after the first day of trial, she, Burns, Rovello, and James remained in the courtroom to organize the evidence. She testified as follows:
Q. At some point or another during that evening do you recall Mr. Burns saying anything about finding something?
A. Yes. I know he mentioned something to the effect of like, “Look; there’s some napkins.”
Q. Do you recall who was present when he said that?
A. I mean, the only person I can tell for sure was myself. Zaren may have been in here. Tony may have been in here. But I know I was here.
|inQ. Do you recall whether there was any further discussion about those napkins?
A. None whatsoever.
Q. Was there any laughter or joking about the napkins?
A. I mean, maybe. But I don’t believe I laughed or joked. But maybe Lon, like, chuckled or something. I’m not — you know, I’m not sure. I didn’t really pay much attention. It wasn’t, you know, in a focus.
Q. Okay. When you say it wasn’t in focus, you knew, however, napkins had been used before, correct—
A. Right.
Q. — in one of these rapes?
A. Right.
Q. But you’re saying you just didn’t make any connections between the napkins you found and the napkins that might have been used before?
A. At the time when it was said, there was no connection whether or not, you know, these napkins were connected to any of those crimes specifically or anything. I didn’t — I just didn’t even pay attention. I think I glanced and turned back.
[[Image here]]
Q. To the best of your recollection, when did the napkins assume some significance to you, the napkins found in the uniform?
A. After Robert had cross-examined Sergeant Ray and I think Lon got back up to do re-direct. Robert had brought up the napkins as an issue in the cross-examination. And in the re-direct, we *840 brought out the napkins; or at least, I think I signaled to Lon that he had reminded me about napkins being in the pocket because he had introduced some other napkins to the witness on re-direct.
After hearing the testimony, the trial court found Burns in constructive contempt of court for tampering with evidence by planting the napkins in the defendant’s pants. The court ruled that “[i]t is obvious respondent Burns intended to use the napkins as evidence against the defendant, napkins which only he and Assistant District Attorney Landrum knew existed.” “The Court concluded the body of evidence, reasonable findings and permissible inferences excluded every reasonable hypothesis of innocence.” The trial court then excluded the napkins from trial and _LuSentenced Burns to six months imprisonment in parish prison. The state (on behalf of Burns) filed writs with the Fourth Circuit. On November 17, 2000, the Fourth Circuit stayed all proceedings, ordered that Burns be released from jail, and ordered the trial court to provide a minute entry and a transcript of the contempt hearing by November 27, 2000.
On April 6, 2001, the Fourth Circuit affirmed the trial court’s contempt citation but vacated the defendant’s sentence and remanded the case for resentencing. State v. Lee, 00-2516 (La.App. 4 Cir. 4/6/01), 787 So.2d 1020. On April 16, 2001, the date of Burns’ resentencing hearing, Burns filed a Motion and Incorporated Memorandum to Recuse Trial Judge, which the trial judge denied on that date. Burns’ attorney called several witnesses to testify as to Burns’ character, as well as Burns himself, who testified that he did not plant the evidence, and apologized for not reporting to defense counsel and the court that he had found the evidence. At the conclusion of the testimony, Judge Hunter again sentenced Burns to six months in prison, stating, in part, that:
The evidence was quite clear that [Burns] planted napkins in the uniform pants of George Lee to guarantee a conviction. This act was far and above the duty to disclose material evidence. It was simply outrageous and reprehensible.
On the afternoon of April 16, 2001, Burns filed an emergency motion for stay, and writ application seeking his release from custody pending disposition of the writ challenging the excessiveness of sentence at the Fourth Circuit, which the Fourth Circuit denied that evening. This Court then granted a stay of all proceedings in the prosecution of Burns for constructive contempt, including imposition of sentence, pending the disposition of supervisory writs filed in this Court, and ordered the immediate release of Burns. State v. Lee, III, In Re: Lionel Burns, 01-1080 (La.4/16/01), 787 So.2d 276. We now consider the merits of Burns’ writ application.
| ^DISCUSSION

Sufficiency of the Evidence

Burns argues that the evidence is insufficient to sustain his conviction for constructive contempt. Our standard of review is as follows: “[i]n reviewing the sufficiency of the evidence to support a conviction, an appellate court in Louisiana is controlled by the standard enunciated by the United States Supreme Court in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) ... [T]he appellate court must determine that the evidence, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime had been proved beyond a reasonable doubt.” State v. *841 Captville, 448 So.2d 676, 678 (La.1984); see also In re Milkovich, 493 So.2d 1186, 1189 (La.1986) (burden of proof in a criminal contempt proceeding is proof of guilt beyond a reasonable doubt).
When circumstantial evidence forms the basis of the conviction, “assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence.” La. R.S. 15:438; State v. Jacobs, 504 So.2d 817, 820 (La.1987); State v. Porretto, 468 So.2d 1142, 1146 (La.1985) (La. 15:438 serves as an evidentiary guide for the jury when considering circumstantial evidence). The standard of review in circumstantial evidence cases under Jackson is as follows:
In circumstantial evidence cases, this court does not determine whether another possible hypothesis suggested by a defendant could afford an exculpatory explanation of the events. Rather, this court, evaluating the evidence in the light most favorable to the prosecution, determines whether the possible alternative hypothesis is sufficiently reasonable that a rational juror could not have found proof of guilt beyond a reasonable doubt under Jackson v. Virginia, [supra], La. R.S. 15:438; State v. Captville, [supra]; State v. Rosiere, 488 So.2d 965 (La.1986).
State v. Davis, 637 So.2d 1012, 1020 (La.1994).
11sAn appellate court reviewing a conviction of constructive contempt under La.C.Cr.P. art. 23[4] must determine that the evidence, viewed in the light most favorable to the prosecution, was sufficient for a rational trier of fact to conclude beyond a reasonable doubt that the defendant willfully disobeyed a lawful order of the court or violated a duty owed by reason of his or her employment to assist the court in the administration of justice. See In re Milkovich, supra at 1189; State v. Hooker, 00-0751 (La.App. 4 Cir. 5/17/00), 763 So.2d 738, 749.
We will first review the trial court’s finding, affirmed by the court of appeal, that Burns is guilty of constructive contempt of court for tampering with or planting evidence. In our review, we will consider only the evidence presented at the November 17, 2000 contempt hearing, not the evidence presented at the contempt hearing on October 23-25, 2000, which the Fourth Circuit properly vacated and remanded to the trial court for further proceedings consistent with the procedure set out in La.C.Cr.P. art. 24. Because Burns’ conduct at the October 18, 2000 trial of George Lee forms the basis of this contempt proceeding, we will consider the relevant portions from the transcript of that proceeding as well.
At the November 17, 2000 hearing, no direct evidence was presented that Burns planted the evidence in the pants pocket. No one testified that they saw Burns put the napkins in the pants pocket and Burns did not confess to such. However, there was circumstantial evidence presented that could lead one to believe that Burns planted the evidence. Three witnesses testified regarding the pants when they were seized from Lee’s apartment in August of 1999 and received by Central Evidence. Sergeant Ray testified that after the pants were seized from Lee’s apartment, he remembers feeling 114the outside of the pants and did not feel any napkins. He testified *842 that his routine procedure upon seizing clothing is to put his hands in the pockets, but could not remember doing so in this case. Finally he testified that the napkins could have been in the pockets at this time but he did not think he would have missed them. Sergeant Harrison testified that he remembers shaking the pants and squeezing them to make sure nothing was in the pockets, but that he did not search inside the pockets. Both officers testified that they brought the pants to Central Evidence in a bag. Teresa Thompson, the technician in Central Evidence who initially received the pants, testified that she did not remember these particular pants but that her normal procedure was to search the pockets of all clothing she receives, unless she sees the police officer do so in her presence.
Three employees of the district attorney’s office testified. Zaren James testified that he was in and out of the courtroom that evening and does not remember seeing Burns find the napkins. Anthony Rovelo testified that he was in the courtroom for 45 minutes after the proceedings for the day had ended and that he left before Burns. He also did not see Burns find the napkins. Keva Landrum testified that she remembers Burns saying “look, there’s some napkins,” but that she did not pay any attention and just glanced at Burns and then turned back to her work. She further testified that she attached no significance to the napkins at that point and that it was not until the re-direct examination of Sergeant Ray the next day that she signaled to Burns that Ray’s testimony had reminded her the napkins were significant. Burns did not testify.
Other relevant circumstantial evidence was the fact that two victims in the Lee case gave statements to police that Lee used napkins in the perpetration of the crimes. Further, the police seized napkins from two of the crime scenes and the prosecution introduced these napkins in all three trials. Finally, the napkins in Lee’s pants did not appear until the third trial.
| ^Although this evidence tends to suggest that the napkins were not in Lee’s pants pocket when seized from his apartment on August 25, 1999 and that Burns could have planted the napkins because he is the one who found them on October 18, 2000 and presented to the jury on October 19, 2000, the evidence does not prove this beyond a reasonable doubt under Jackson. There are two other possible alternative hypotheses of innocence that are sufficiently reasonable such that the fact finder could not have found that Burns was guilty beyond a reasonable doubt of planting the evidence in the pants pocket.
The first reasonable hypothesis of innocence is that the napkins were in the pants when the pants were seized from Lee’s apartment on August 25, 2000 and received into Central Evidence, but that the police merely overlooked the napkins. Sergeant Ray acknowledged that the napkins could have been in the pockets at this time although he did not think he would have missed them. Thompson could not even remember these particular pants, but could only testify as to her routine procedure, and although Sergeant Harrison testified that he shook the pants and squeezed them, he acknowledged that he did not search inside the pockets. In the absence of testimony that any officer actually put his or her hands inside the pockets of the pants, the napkins could have been inside the pants pocket all along, and simply been missed by the police.
Another reasonable hypothesis of innocence is that the napkins were not in the pockets when the pants were seized, but that between the time of the seizure in August in 1999 and October 19, 2000, someone else, including another district *843 attorney or another policeman, planted the evidence. No evidence was presented at the contempt hearing to completely account for the care, custody, or control of the pants from the time of seizure until October 19, 2000. Because other police officers and district attorneys have had access to the evidence, it is possible that someone else Implanted the evidence in hopes that this evidence would be discovered at, or in preparation for, trial. While the fact that Burns found and ultimately attempted to use the evidence at trial, even though it was at the prompting of his co-counsel, suggests that he might have been the one who planted the napkins, it clearly does not establish his guilt beyond a reasonable doubt.
Thus, evaluating the evidence in the light most favorable to the prosecution, we find that possible alternative hypotheses of innocence are sufficiently reasonable that a rational trier of fact could not have found proof that Burns planted the napkins beyond a reasonable doubt under Jackson v. Virginia. Although one may have strong suspicions that Burns may have planted this evidence, because his guilt was not proven beyond a reasonable doubt, we must enter an acquittal on the charge of contempt for the alleged tampering with or planting evidence.
Burns was also convicted of constructive contempt for willfully failing to disclose his discovery of the napkins to defense counsel and the trial court. The court of appeal correctly found that Burns had a continuing duty to disclose the napkins, especially in light of the court of appeal’s prior orders to the state to “scrutinize the entirety of its file for evidence favorable to defendant, including evidence that tends to undermine the credibility of its witnesses,” under La.C.Cr.P. art. 729.3, which provides as follows:
If, subsequent to compliance with an order issued pursuant to this Chapter and prior to or during trial, a party discovers additional evidence or decides to use additional evidence and such evidence is or may be, subject to discovery or inspection under the order issued, he shall promptly notify the other party and the court of the existence of the additional evidence, so that the court may modify its previous order or allow the other party to make an appropriate motion for additional discovery or inspection.
The sanctions for failure to comply with the discovery provisions of the Code of Criminal Procedure are found in La. C.Cr.P. art. 729.5. The sanctions for willful 117failure to comply are as follows:
B. In addition to the sanctions authorized in Part A hereof, if at any time prior or subsequent to final disposition the court finds that either the state through the district attorney or assistant district attorney or the defendant has willfully failed to comply with this Chapter or with an order issued pursuant to this Chapter, such failure shall be deemed to be a constructive contempt of court.
Direct evidence was presented that Burns found the napkins on the evening of October 18, 2000, did not disclose this discovery to the trial court or defense counsel, and then on October 19, 2000, during his re-direct examination of Sergeant Ray, had him pull out the napkins out of the pants pocket in front of the jury. However, Burns argues that the evidence does not exclude the reasonable hypothesis of innocence that Burns was simply unaware that the discovery of napkins in Lee’s pants pocket was relevant to the case until Sergeant Lee’s cross-examination on October 19, 2000 as to the rape of Trinette Clay. He argues that up until the very *844 moment, Lee’s defense had been that the victim consented to sex, making the napkins irrelevant. He argues that when defense counsel asked Sergeant Lee “[n]ow, other than the testimony of Miss Clay, you have no physical evidence whatsoever to show any type of sexual assault involving Mr. Lee upon her,” that the defense strategy changed from consent to lack of physical evidence that linked Lee to that crime, making the napkins relevant.
We find that this hypothesis of innocence is not reasonable. Trinette Clay gave statements to the police that Lee raped her at a specific location along the City Park bayou after he stopped her and a companion there in their automobile. While Lee’s defense as to Trinette Clay was that they engaged in consensual sex, he had given statements to the police that the sexual activity occurred, not along the City Park bayou, but in a separate location in the St. Bernard housing project. She testified that Lee used napkins to wipe himself after the rape and the police collected napkins at the City Park bayou crime scene. These napkins were introduced into evidence at two |istrials where Burns was a prosecutor. Burns had to know the relevance of the napkins and therefore, we find that the evidence proves beyond a reasonable doubt that Burns “willfully” failed to disclose the napkins in violation of La.C.Cr.P. arts. 729.3 and 729.5.
Because our ruling today affirms only Burns’ constructive contempt conviction for willfully failing to timely disclose the discovery of the napkins, the six month sentence imposed by the trial judge is inappropriate and is vacated. However, Burns’ conduct in failing to timely disclose the discovery of this evidence caused a mistrial in an important criminal prosecution. Therefore, we impose the maximum fine of $500.00 under La.C.Cr.P. art. 25(B).[5]
DECREE
For the reasons stated herein, the judgment of the court of appeal affirming Lionel Burns’ conviction for constructive contempt for tampering with or planting evidence is reversed and the judgment of the court of appeal affirming Lionel Burns’ conviction for constructive contempt for failing to disclose the discovery of the evidence is affirmed. We vacate Lionel Burns’ sentence of six months imprisonment and order Burns to pay a fine of $500.00.
REVERSED IN PART; AFFIRMED IN PART; SENTENCE VACATED. LIONEL BURNS ORDERED TO PAY FINE OF $500.00.
CALOGERO, C.J., and KNOLL, J„ concur in part and dissent in part, and assign reasons.
JOHNSON, J., concurs and assigns reasons.

 Retired Judge Robert L. Lobrano, assigned as Associate Justice Pro Tempore, participating in the decision.

. At his first trial on January 20, 2000, the jury found him not guilty of one count of extortion and could not agree on a verdict as to one count of sexual battery and two counts of kidnapping. Trial was reset, and on February 24, 2000, the State nolle prosequied this case and reinstituted the remaining charges and added more, charging the defendant with six counts of forcible rape and four counts of second degree kidnapping. On April 5, 2000, during the second trial, the court declared a mistrial, finding that the State had concealed Brady material. The court ordered the State to produce its entire file for the defense. The Fourth Circuit granted the State's writ, vacated the trial court’s order, ordered the State to review its file and produce any evidence which bears on the credibility of its witnesses, and ordered the State to provide the defense with a list of any statements in its possession.
On May 19, 2000, the State nolle prose-quied the charges in that case and then reinst-ituted the charges and added the additional counts that make up the charges brought in the third trial, which trial was set for June 13, 2000. The State produced the list of all statements in its possession and turned over the tapes of these statements to the court for an in camera inspection for any Brady material. The court then turned over the tapes to the defense without an in camera inspection. The trial was continued various times and on August 29, 2000, the Fourth Circuit granted the State’s writ, and ordered the trial court to conduct an in camera inspection of the tapes before ordering that only the tapes containing exculpatory material should be turned over to the defense.

. On February 6, 2001, defendant George Lee’s fourth trial began before Judge Hunter and on February 10, 2001, the jury found defendant Lee guilty on five counts of forcible rape and three counts of second degree kidnapping. Lee was sentenced on March 13, 2001.

. La.C.Cr.P. art. 24 provides as follows:
A.When a person is charged with committing a constructive contempt, he shall be tried by the judge on a rule to show cause alleging the facts constituting the contempt. The rule may be issued by the court on its own motion or on motion of the district attorney.
B. A certified copy of the motion and of the rule shall be served on the person charged in the manner of a subpoena not less than forty-eight hours prior to the time assigned for trial of the rule.
C. A person charged with committing a constructive contempt of a court of appeal may be found guilty thereof and punished *838 therefor after receiving a notice to show cause, by brief, to be filed not less than forty-eight hours from the date the person receives such notice, why he should not be found guilty of contempt and punished accordingly. Such notice may be sent by certified or registered mail or may be served by the sheriff. The person so charged shall be granted an oral hearing on the charge if he submits a written request to the clerk of the appellate court within forty-eight hours after receiving notice of the charge.
D. If the person charged with contempt is found guilty, the court shall render an order reciting the facts constituting the contempt, adjudging the person charged with the contempt guilty thereof, and specifying the punishment imposed.

. A finding of constructive contempt under La.C.Cr.P. art. 23 includes the “willful neglect or violation of duty by a clerk, sheriff, or other person elected, appointed, or employed to assist the court in the administration of justice” or the “willful disobedience of any lawful judgment, order, mandate, writ, or process.”

. We have reviewed the other assignments of error and find no error by the trial court on these issues.