922 So.2d 517 (2006)
STATE of Louisiana
v.
Richard Thomas PIGFORD.
No. 2005-K-0477.
Supreme Court of Louisiana.
February 22, 2006.
*518 Charles C. Foti, Jr., Attorney General, Paul Carmouche, District Attorney, Edward M. Brossette, Sean David Miller, Tommy J. Johnson, Assistant District Attorneys, for applicant.
James Edward Beal, Jonesboro, for respondent.
PER CURIAM.
Defendant was charged by bill of information with possession of marijuana with intent to distribute in violation of La.R.S. 40:966(A)(1). After trial in which defendant represented himself until he fled during a recess following the state's case in chief, a jury returned a verdict of guilty as charged.[1] The court eventually reacquired defendant's presence and sentenced him to eight years imprisonment at hard labor. On appeal, the Second Circuit reversed his conviction and sentence on grounds that the state's evidence failed to prove that he had constructive possession of the marijuana found in the trailer of an 18-wheel truck he had driven from California into Louisiana where it was stopped in Caddo Parish en route to either Pennsylvania or New York. State v. Pigford, 39,-306 (La.App.2d Cir.1/26/05), 892 So.2d 724. This Court granted review because we agree with the state that the court of appeal erred by substituting its view of the evidence for that of the jury and thereby *519 revived as a basis for reversal a hypothesis of innocence advanced by defendant at trial but rationally discredited by jurors in reaching their verdict. We therefore reverse the decision below and reinstate defendant's conviction and sentence.
The evidence adduced at trial showed the following: On September 25, 2000, a computer weight monitoring system set up on Interstate 20 in Caddo Parish by state police registered an eastbound Volvo 18-wheeler 3,000 pounds over the state weight limit of 80,000 pounds. The vehicle, driven by defendant, was directed to pull over into the nearest weigh station where the truck was weighed on the stationary scales and again registered 3,000 pounds over the legal limit. Sergeant Brierre Thomas, with the Louisiana Department of Transportation, Weights and Standard Unit, and Deputy Danny Williams, a K-9 officer with the Caddo Parish Sheriff's Office, interviewed defendant. Defendant told them that he was traveling to New York; however, the bill of lading showed that he was hauling a load of grapes from Reedley, California to Pittsburgh, Pennsylvania.
Because they were concerned about the discrepancy in the destination for the load of grapes and about defendant's seemingly wayward route from California to either New York or Pennsylvania, Sergeant Thomas and Deputy Williams asked him to open the back of the trailer so they could see what he had as cargo. Defendant refused to open the trailer, telling the officers he was a member of the NAACP, and that he knew he had a right to refuse to allow the search.
Immediately after defendant refused to open the trailer, Sergeant Thomas called Peggy Adley, an agent with the Public Service Commission. Sergeant Thomas testified that he called Adley because she would need to know what was in the trailer and that she would need to check defendant's "single state registration" and insurance, and inspect his load to see if it matched his bill of lading. Officer Adley arrived and told defendant that she had the right to inspect the trailer without his consent. Defendant produced a key, unlocked the padlock, and opened the trailer's doors. At the request of Officer Adley, Officer Thomas climbed up onto the back of the trailer to inspect the load. The officer testified that as he stood up at the back of the trailer he saw in "plain view" the end of a large package sitting on top of the boxes of grapes, less than an arm's length from the back end of the load. Officer Thomas turned his head and asked defendant what the object was, and defendant indicated that he knew nothing about it. The officer then reached over the stacked boxes of grapes and pulled the package towards him. The package was wrapped in clear plastic wrap and duct tape; it measured approximately a foot wide and six-and-a-half to seven feet long. According to Adley, who stood outside at the rear of the truck, despite its size, the package was not visible from her vantage point when she looked through the opened doors of the trailer.
After Thomas removed the package, Deputy Williams cut a slit in the side and determined that the bundle contained marijuana. In all, the package contained approximately 52 pounds of marijuana possessing a street value of $52,000. Both officers testified at trial that the sheer amount of marijuana, its value, and the manner of its packaging, were all consistent with an intent to distribute. However, no fingerprints were found on the package and the officers had otherwise determined that defendant's bill of lading for his cargo was in good order.
Because defendant fled immediately after the state presented its case in chief, he did not testify at trial and did not put on a *520 defense case of his own. Nevertheless, his defense emerged in his opening remarks to jurors and in cross-examination of the state's witnesses. Defendant urged jurors to consider that he was not off route because Interstate 20 runs to California, and he promised to produce a map to prove the point. Defendant also urged jurors to consider that no evidence would establish that he had witnessed the loading of the trailer in California. Defendant prompted Deputy Williams to admit that it was possible that someone loading the load could have placed the marijuana into the truck while he was sorting out the paperwork before leaving California with the load, and that someone else could have taken the marijuana off at the other end, and "... the defendant would never have known what he was carrying." Defendant also got Williams to admit that he did not remember if he ever asked him if he watched the truck as it was loaded. It was therefore entirely possible, defendant suggested, that persons unknown to him had concealed the marijuana in the trailer without his knowledge and far enough back from the trailer door that it was not visible to anyone standing outside, and then alerted other conspirators in New York waiting to off-load the contraband that the shipment was on its way. As for the discrepancy in the load's ultimate destination, defendant suggested that he had been transporting a "blind shipment," one intended by the broker for a destination other than the one listed on the bill of lading.
In reversing the defendant's conviction, the Second Circuit panel emphasized that Sergeant Thomas found the marijuana not in the cab of the tractor but in the trailer, on top of the truck's legal cargo of grapes and positioned out of the plain view of anyone standing, as Adley had, in the opened doors at the rear of the vehicle. On the premise that "one cannot apply private vehicle case law regarding constructive possession to drugs found in the cargo area of a common carrier involving the transportation of goods or persons," Pigford, 39,306 at 10, 892 So.2d at 730, the court of appeal reasoned that defendant's access to the cargo area did not alone indicate that he had knowledge of the contraband concealed in the trailer. In the appellate court's view, the state needed to present additional evidence demonstrating defendant's guilty knowledge "to preclude the possibility that the contraband was put there by third persons during the loading of the cargo, or evidence proving the driver's knowledge of the contraband in the cargo area." Id. The court of appeal ultimately concluded that the state's evidence did not exclude the reasonable hypothesis that persons responsible for loading the trailer placed the marijuana on top of the grapes and out of sight for unloading by other members of the conspiracy at the destination point for the truck. In addition, although the tractor was registered to defendant's wife, who was with him at the time of his arrest, the state presented no evidence at trial as to the ownership of the cargo trailer. The state's case therefore did not "preclude the possibility that the defendant may have backed his Volvo tractor up to someone else's loaded trailer, hitched the trailer to his tractor, locked the trailer doors, and driven off." Pigford, 39,306 at 13, 892 So.2d at 731.
However, the pertinent question on review was not whether the appellate court found that defendant's hypothesis of innocence offered a reasonable explanation for the evidence at trial but whether jurors acted reasonably in rejecting it as a basis for acquittal. In reviewing the sufficiency of evidence, an appellate court must determine that the evidence, whether direct or circumstantial, or a mixture of both, viewed in the light most favorable to the prosecution, was sufficient to convince a *521 rational trier of fact that all of the elements of the crime have been proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Captville, 448 So.2d 676, 678 (La.1984). This standard, now legislatively embodied in La.C.Cr.P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact-finder. State v. Robertson, 96-1048, p. 1 (La.10/4/96), 680 So.2d 1165; State v. Lubrano, 563 So.2d 847, 850 (La.1990). A reviewing court may intervene in the trier of fact's decision only to the extent necessary to guarantee due process of law. State v. Mussall, 523 So.2d 1305, 1310 (La.1988). Accordingly, in cases relying on circumstantial evidence to prove one or more elements of the crime, when the fact-finder reasonably rejects the hypothesis of innocence advanced by the defendant at trial, that hypothesis fails, and the verdict stands unless the evidence suggests an alternative hypothesis sufficiently reasonable that rational jurors could not find proof of the defendant's guilt beyond a reasonable doubt. State v. Lee, 01-1080, p. 12 (La.11/28/01), 800 So.2d 833, 841; Captville, 448 So.2d at 678.
In the present case, the court of appeal justified its decision to reverse in part on grounds that the state failed to negate the possibility that defendant simply hooked his tractor up to the wrong trailer and unwittingly drove off with over $52,000 worth of marijuana and someone else's legal load of grapes. That alternative hypothesis of innocence may have been possible, but it clearly was not so probable that reasonable jurors would necessarily have to entertain a reasonable doubt of defendant's guilt. As to the hypothesis of innocence actually advanced by defendant at trial through his cross-examination of the state's witnesses, i.e., that he did not load the trailer and therefore remained unaware of the marijuana stashed by someone else on top of his legal load and out of sight to a casual observer, defendant clearly had dominion and control over the trailer and its contents as well as his tractor. The trailer had been padlocked only and Officer Thomas's testimony at trial informed jurors of the difference between a trailer sealed by the shipper to deny the driver or anyone else access to the contents during transportation and a trailer merely padlocked, as to which the driver retains access to the interior and cargo. Officer Thomas explained that the driver of a sealed cargo would not break the seal "because the load may be turned down because the load has been tampered with." The seal thus prevents the driver from gaining access to the load until it is delivered. On the other hand, "[a] load that has a lock on it with him having the key then he has ample opportunity and time to do whatever he wants to with the load. He can open it up, go in there and check it, do whatever."
Defendant's dominion and control over the trailer and access to its contents did not alone establish his guilty knowledge of the marijuana bundle placed on top of the grape pallets. See State v. Major, 03-3522 at 8-9 (La.12/1/04), 888 So.2d 798, 803. Nevertheless, guilty knowledge, an essential component of any showing that a defendant has constructive possession of contraband, i.e., dominion and control over it although the contraband is not in his actual possession, State v. Bell, 566 So.2d 959, 960 (La.1990); State v. Sweeney, 443 So.2d 522, 528 (La.1983), may be inferred from the circumstances of the transaction. Major, 03-3522 at 8-9, 888 So.2d at 803; State v. Goiner, 410 So.2d 1085, 1087 (La.1982).
In the present case, the court of appeal feared that "[t]o convict a driver *522 only on the evidence that he had access to the cargo area creates a dangerous precedent for the many drivers involved in commercial transportation of goods that happen to have access to the cargo they are carrying." Pigford, 39,306 at 10, 892 So.2d at 730. However, it remains possible to subscribe to that reluctance yet still find the state provided jurors with additional evidence from which a rational trier of fact could infer defendant's guilty knowledge of the marijuana stashed inside the trailer. Sergeant Thomas testified that a citation for an overweight load was a "common occurrence" on the interstate but that the defendant appeared unusually nervous for such a routine violation. Defendant also appeared to have gone considerably off course, given his bill of lading indicating that the trailer had been loaded in California with pallets of grapes for delivery in the Northeast, either in Pennsylvania or New York. Defendant never produced his promised map and jurors might not have known from personal knowledge that 1-20 does not run all of the way to California but reaches only into west Texas where it connects to I-10, which does run into southern California. See http://www.wikipedia.org/wiki/ Interstate-20 ("Interstate 20 (abbreviated 1-20 or in Texas IH-20) is a major east-west interstate highway in the southeastern United States. It runs 1,508 miles (2,427 km) from near Kent, Texas at Interstate 10 to Florence, South Carolina, at Interstate 95."). Officer Williams lacked that specific knowledge but nevertheless testified without contradiction that "[i]t seems like to me it was a long way around from California to New York coming down this far instead of going across the mid section. . . . In my estimation from California going to New York if you go right through the middle of the country instead of coming down south and then going up it would be shorter." Thus, whether defendant lied to the officer by informing him he was on his way to New York or whether the bill of lading revealed his correct destination in Pennsylvania, he had embarked on a particularly circuitous course for delivering the grapes. In fact, defendant apparently lied to the officers about New York. None of the state's witnesses had ever heard of a "blind shipment" in which the bill of lading did not list the correct destination of the load. "Your bills have to match," Officer Adley informed jurors.[2]
Defendant's apparently wayward course and attempt to conceal his ultimate destination gave rise to a reasonable inference that he had a particular and not-so-innocent reason for traveling far out of his way although engaged in interstate shipment of perishable cargo. The marijuana may not have been in plain view from outside the trailer but anyone with access to the cargo could have found the package in the same way that Officer Thomas discovered it, simply by standing in the back of the trailer and inspecting the load. The supposed conspirators loading the trailer had therefore chosen the least likely spot to conceal the six-to-seven-foot-long marijuana *523 package inside a trailer that was not sealed by the shipper but padlocked only. In fact, the location of the marijuana packet on top of the grape pallets at the rear of the trailer clearly suggested that the contraband had been placed in the trailer after it was fully loaded and not during the loading process, a scenario entirely consistent with the state's theory of the case that at some point after loading defendant used his key to unlock the trailer and stash his marijuana shipment.
Finally, rational jurors could also consider the likelihood that a person would commit over $50,000 worth of marijuana to a carrier completely oblivious of the conspiracy to ship the contraband, although the load had not been sealed but merely padlocked and the driver therefore retained access to the trailer's interior and could easily find the package placed on top of the legal load. See Major, 03-3522 at 10, 888 So.2d at 803 ("`The quantity of drugs and cash in the car indicated the likelihood of drug dealing, an enterprise to which a dealer would be unlikely to admit an innocent person with the potential to furnish evidence against him.'") (quoting Maryland v. Pringle, 540 U.S. 366, 373, 124 S.Ct. 795, 801, 157 L.Ed.2d 769 (2003)); see also United States v. Serrano-Lopez, 366 F.3d 628, 635 (8th Cir.2004) ("The large quantity of drugs involved is evidence of the defendants' knowledge. Even if the drugs were not owned by the defendants, it is unlikely that the owner would place approximately $130,000 worth of cocaine in the hands of people who do not even know it is there.").
Under these circumstances, we conclude that jurors reasonably rejected the hypothesis of innocence advanced by defendant, and that the evidence presented at trial suggested no other hypothesis necessarily giving rise to reasonable doubt as to defendant's guilty knowledge of the marijuana within the trailer. The evidence otherwise supported the jury's finding that defendant had dominion and control over the contraband by virtue of his access to the interior of the trailer and that he therefore had constructive possession of the marijuana, in an amount and value sufficient to support an inference of intent to distribute. Accordingly, the decision below is vacated, defendant's conviction and sentence are reinstated, and this case is remanded to the court of appeal for consideration of the remaining counseled and pro se assignments of error pretermitted on original hearing.
OPINION OF THE COURT OF APPEAL VACATED; CONVICTION AND SENTENCE REINSTATED; CASE REMANDED TO COURT OF APPEAL.
NOTES
[1] Defendant made no claim below, and does not argue here, that his conviction in absentia denied him his rights under the Sixth Amendment and the Due Process Clause, particularly in a case in which he had waived the assistance of counsel and therefore left his interests entirely unrepresented during the remaining portions of trial. As a general rule, a defendant who appears in court at the beginning of trial but disappears at the later stages of the proceedings waives his right to trial in his presence. See Diaz v. United States, 223 U.S. 442, 32 S.Ct. 250, 56 L.Ed. 500 (1912); Fed.R.Crim.P. 43. One purpose served by the rule is to "deprive[] the defendant of the option of gambling on an acquittal knowing that he can terminate the trial if it seems that the verdict will go against him  an option that might otherwise appear preferable to the costly, perhaps unnecessary path of becoming a fugitive from the outset." Crosby v. United States, 506 U.S. 255, 262, 113 S.Ct. 748, 753, 122 L.Ed.2d 25 (1993) (distinguishing cases in which the defendant flees before the beginning of trial and in which the court may not proceed in the defendant's absence.)
[2] Blind shipments do exist in trucking. See http://www.freight shippingcenter.com/ freightshipping terms ("Blind Shipment: When the customer has contracted with the carrier so that the shipper or consignee information is not given. This keeps the origin location and receiving destination unaware of each other and provides two separate Bills of Lading in which both show the carrier's terminal as the shipper and the receiver."); http:// www.trucking distribution.com/lossary (same). However, the bill of lading introduced into evidence at trial is a "Straight Bill of Lading for Exempt Commodities," which shows both the consignor, Produce Edge Cold Storage, Inc., in Reedley, California, and consignee, Tom Lange Company, Inc., of Pittsburgh, Pennsylvania, as well as the carrier, 2 Girls Trucking, and driver, defendant.