PEATROSS, J.
| defendant, Kevin Pitts, was charged by bill of information and amended bill of information with the armed robbery of Dustin Kevin Broussard, armed robbery of Bryan Abercrombie, simple burglary of a vehicle and possession of a firearm by a convicted felon. The State later dismissed the simple burglary charge; and, after a jury trial, Defendant was found guilty of simple robbery of Kevin Broussard and of possession of a firearm by a convicted felon and not guilty of armed robbery of Bryan Abercrombie.
Pursuant to multiple habitual offender bills, the trial court found Defendant to be a fourth felony offender and sentenced Defendant to 25 years’ imprisonment for the conviction of possession of a firearm by a convicted felon and to life imprisonment for the simple robbery conviction. The trial court denied Defendant’s Motion for Reconsideration. Defendant now appeals. *957 For the reasons stated herein, the convictions of Defendant are affirmed.

FACTS

In late 2006, two friends, Abercrombie and Broussard, along with Broussard’s fiancee, Erica Pardue, went to Spurgeon Drive in Monroe to “get a little coke.” According to the testimony of Broussard and Abercrombie, the three traveled in Broussard’s truck and Broussard was driving. When they arrived at Spurgeon Drive, Abercrombie got out of Broussard’s vehicle, but was not able to find his supplier. Noticing Defendant standing outside, Abercrombie approached Defendant and asked him if he could get some cocaine. Abercrombie testified that he gave [■¿Defendant $20 and was provided with a small amount of cocaine, “but it wasn’t straight.” Shortly thereafter, Defendant told Abercrombie that he owed Defendant money and took Abercrombie’s cell phone without permission. Abercrombie then returned to the truck where Broussard and Pardue were waiting. Pardue called Aber-crombie’s cell phone, which was answered by Defendant, and the two began to argue. Defendant then walked over to the truck and took Pardue’s and Broussard’s cell phones at gunpoint. At trial, Abercrombie and Broussard described the gun as a nickel-plated 9 mm pistol.
A few minutes later, Broussard went to a liquor store and attempted to write Defendant a check for $60, but the check was refused by the store clerk. Broussard convinced Defendant to allow him to take Pardue home. Abercrombie and Brous-sard took Pardue home and then returned to Defendant with an amplifier, which they hoped to give Defendant in exchange for the return of their cell phones. When Abercrombie and Broussard returned, Defendant rejected the amplifier that they tried to give him. Defendant then pulled out a gun, gave the gun to a young woman who was with him and told her to “shoot them” if they moved. Defendant then proceeded to remove Broussard’s stereo, speakers and amplifier from his truck. According to Broussard, the value of the stolen stereo equipment was approximately $900.
After removing the stereo equipment, Defendant demanded the keys to Brous-sard’s truck and then drove Broussard, Abercrombie and the young woman to a house where he dropped off the two men. On the way to the | ¿house, Defendant and Abercrombie smoked crack cocaine, but Broussard did not. Defendant left Aber-crombie and Broussard at the house with an unarmed older female who sat with the two men for several hours until Defendant returned. Neither Broussard nor Aber-crombie attempted to leave the house while Defendant was gone, later testifying that they stayed at the house because it seemed unsafe to leave in the middle of the night on foot in an unfamiliar neighborhood.
At approximately 4:00 a.m., Defendant returned to the house and drove Aber-crombie and Broussard back to Spurgeon Drive where he gave Broussard a hug and thanked him “for the materials.” Defendant returned the cell phones, but kept the stereo, speakers and amplifier that he had removed earlier from Broussard’s truck. As Broussard and Abercrombie were heading home, they noticed Sergeant Phillip Zalewski of the Louisiana State Police patrolling LA-139 and they stopped and reported the incident.
Detective Tommy Rhodes of the Monroe Police Department testified that he received a phone call from Defendant the day after he was arrested. After Officer Rhodes advised Defendant of his Miranda rights, Defendant told him that he was the individual at Spurgeon Street, but denied *958 having a gun and robbing the victims. According to Officer Rhodes, Defendant admitted “to everything except for robbing them.” Defendant told Officer Rhodes that he had provided Abercrombie and Broussard cocaine and a place to smoke the cocaine, that he had taken them to his aunt’s house and that he was offered Broussard’s stereo equipment and the use of his vehicle in exchange for helping Broussard and Abercrombie obtain cocaine.
[^Abercrombie identified Defendant in a photographic lineup and both Abercrombie and Broussard identified Defendant at trial. Broussard incorrectly identified Defendant in a photographic lineup; however, he explained the error by stating that the picture of Defendant was outdated and not representative of Defendant’s true appearance. Pardue’s testimony was corroborative of Broussard’s and Abercrombie’s testimony and she also identified Defendant at trial.
Deputy Sheriff Michael Swallow of the Ouachita Parish Sheriffs Office testified at trial after being qualified as an expert in fingerprint identification. His testimony was used to identify Defendant as the same individual who was previously convicted of simple robbery. Defendant and the State stipulated to this fact at trial.

DISCUSSION

Assignment of Error Number One (verbatim): The State failed to present sufficient evidence to support the guilty verdicts of simple robbery and possession of a firearm by a convicted felon.
As to the simple robbery conviction, Defendant admits that the State established the element of “any thing of value” by proving that there was a taking of Brous-sard’s stereo equipment. Defendant also admits that he took the items “from a person” or from “the immediate control of another.” Defendant argues, however, that the State did not prove the element of “the use of force or intimidation.”
Defendant asserts that the victims were not fearful or coerced by Defendant and, to the contrary, readily admitted their involvement in an “apparently sour drug transaction.” According to Defendant, the lack of l.qfear and coercion is indicated by the facts that Abercrombie and Defendant smoked crack together and that Defendant gave Broussard a hug with thanks at the end of the incident. Defendant claims that “there are internal contradictions or irreconcilable conflicts” in the testimony provided by the State’s witnesses; however, Defendant does not further explain this assertion. Defendant sums up his argument with the following statement:
Based upon these principles and the self-serving and contradictory testimony given by the alleged victims, the only direct eye-witnesses to the allegations, it is also requested that this Court vacate the conviction of possession of a firearm by a convicted felon for lack of sufficient evidence.
To the contrary, the State cites applicable law, points to the evidence and asserts that the evidence presented at trial clearly supports Defendant’s convictions. We agree.
The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Tate, 01-1658 (La.5/20/03), 851 So.2d 921, cert. denied, 541 U.S. 905, 124 S.Ct. 1604, 158 L.Ed.2d 248 (2004); State v. Cummings, 95-1377 (La.2/28/96), 668 So.2d 1132; State v. Murray, 36,137 (La.App.2d Cir.8/29/02), 827 *959 So.2d 488, writ denied, 02-2634 (La.9/5/03), 852 So.2d 1020. This standard, now legislatively embodied in La. C. Cr. P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. State v. Pigford, | fi05-0477 (La.2/22/06), 922 So.2d 517; State v. Robertson, 96-1048 (La.10/4/96), 680 So.2d 1165. The appellate court does not assess the credibility of witnesses or reweigh evidence. State v. Smith, 94-3116 (La.10/16/95), 661 So.2d 442. A reviewing court accords great deference to a jury’s decision to accept or reject the testimony of a witness in whole or in part. State v. Gilliam, 36,118 (La. App.2d Cir.8/30/02), 827 So.2d 508, writ denied, 02-3090 (La.11/14/03), 858 So.2d 422.
Simple robbery is defined as the taking of anything of value belonging to another, from the person of another or that is in the immediate control of another, by the use of force or intimidation, but not armed with a dangerous weapon. La. R.S. 14:65. Simple robbery is a felony and is defined as a “crime of violence” under La. R.S. 14:2(B)(23). It is unlawful for a person convicted of felony, ie., a crime of violence as defined in La. R.S. 14:2(B), to possess a firearm or carry a concealed weapon. La. R.S. 14:95.1.
The evidence against Defendant, when viewed in the light most favorable to the prosecution, establishes beyond a reasonable doubt the requisite elements of simple robbery and possession of a firearm by a convicted felon. The State established the elements of simple robbery through the testimony of Broussard, Aber-crombie and Pardue, who testified that Defendant took the stereo equipment from Broussard’s truck while the victims were held at gunpoint. Additionally, the State submitted evidence of Defendant’s prior conviction of simple robbery and the testimony of several witnesses established that Defendant was in possession of a firearm |7during the_incident, thus, proving the elements for the conviction of possession of a firearm by a convicted felon.

CONCLUSION

For the foregoing reasons, the convictions of Defendant, Kevin Pitts, are affirmed.
AFFIRMED.
APPLICATION FOR REHEARING
Before STEWART, CARAWAY, PEATROSS, DREW & MOORE, JJ.
Rehearing not considered.