Judgment rendered October 1, 2025.
Application for rehearing may be filed
within the delay allowed by Art. 922,
La. C. Cr. P.

No. 56,448-KA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

STATE OF LOUISIANA                                    Appellee

versus

ARCHILLE PARREL                                       Appellant
HOLMES, JR.

* * * * *

Appealed from the
First Judicial District Court for the
Parish of Caddo, Louisiana
Trial Court No. 388,519

Honorable Donald E. Hathaway, Jr., Judge

* * * * *

LOUISIANA APPELLATE PROJECT              Counsel for Appellant
By: Holli Ann Herrle-Castillo

JAMES E. STEWART, SR.                     Counsel for Appellee
District Attorney

JASON W. WALTMAN
MARGARET E. RICHIE GASKINS
Assistant District Attorneys

* * * * *

Before PITMAN, THOMPSON, and ROBINSON, JJ.

**PITMAN, C. J.**

Defendant Archille Parrell Holmes, Jr. appeals his conviction for second degree murder, a violation of La. R.S. 14:30.1, for which he was sentenced to life without parole, probation or suspension of sentence. For the following reasons, his conviction and sentence are affirmed.

## FACTS

Defendant was indicted for the second degree murder of Tomel Henry ("Mel"), a violation of La. R.S. 14:30.1, which occurred on February 16, 2022, in Caddo Parish. The following facts were adduced at trial.

Bianca Miles (a/k/a "Beko") testified that she lived with her brother Jakobe Miles at 5230 Mansfield Road in Shreveport. Beko and Mel have a three-year-old son together. She and Mel broke up when their son was two years old, and they had a contentious coparenting relationship. On February 16, 2022, Beko was pregnant with a baby whose father's name is Diamante. Beko received a phone call from Diamante's girlfriend who was angry with Beko for being pregnant with her boyfriend's child. The girlfriend threatened to come to Beko's house to fight with her.

Because she was afraid, Beko called her sisters, Rahquel Miles and Tina Miles, and her cousin, Brionna Murray, to come over to help protect her from Diamante's girlfriend. Rahquel had been dating Defendant for a few months, and he was at her apartment when Beko called. Brionna had known Defendant for years. Tina, Rahquel, Brionna and Defendant drove to Beko's house together. They arrived before noon and met Beko and Jakobe there. Diamante and his girlfriend never showed up, but an hour later, Mel arrived in his car. He had a passenger with him named Cadarious (a/k/a "Tank"), who is the father of Rahquel's child.

Beko testified that when Mel arrived, she and Brionna were outside on the porch and Defendant, Rahquel and Jakobe were inside. Mel was very angry and began arguing loudly with Beko, accusing her of purchasing a car and using his name on the loan. Everyone inside her house heard the argument and came to stand on the porch behind her. She stated that Mel approached her from the ground and that she descended to a lower stair nearer him. He pushed her, she fell and "the next thing I know, AP [Defendant] had shot him [Mel] in the head." She testified that her back was hurt when she fell, but she did not suffer any further injury. She also testified that Mel was unarmed, and she did not have any fear that he was about to seriously hurt her. She stated that Defendant ran to the back yard and never came back. She also stated that her brother ran away and never came back.

Tina testified that she had gotten out of Rahquel's truck upon arrival at Beko's house, but returned to it to make a phone call. She was still in the truck when Mel and Tank arrived. When the argument began, she got out of the vehicle and saw Rahquel, Brionna and Defendant standing on the porch behind Beko. She testified that when the shoving began, she and Tank rushed over to try to stop Mel and break up the argument. Beko was approaching Mel, and Brionna and Rahquel were trying to pull her away. Beko slipped and fell on her porch, and then a gunshot was fired. She testified that she looked up and saw Defendant holding a gun and aiming it right at Mel. She stated that Defendant ran out the back door and hopped the fence behind the house. She testified that he was unarmed and that the only thing he had taken out of the car with him was his phone, which he put in his pocket.

Brionna testified that she had known Defendant for many years and that he was like a brother to her. Her memory of the event differed slightly from Beko's in that she was standing between Beko and Mel when the shot was fired. She stated that she did not see Defendant shoot Mel because Mel was facing her, but after the gun was fired, she heard Defendant say, "No male was gonna hit a female in front of him." She testified that Mel was unarmed and that she was not sure whether Beko's life was in danger.

Rahquel came out of the house when she heard the argument. She tried to break it up and was behind Beko on the stairs; but when Mel pushed Beko, she stepped between them to stop him. She testified that when Beko fell, she turned around to help Beko stand up and that was when Mel was shot. She did not see Defendant shoot Mel, but she stated she knew he had done it "because he was there." She stated that Defendant left immediately after Mel was shot.

Rahquel was cross-examined about her testimony at trial because during her interview with the police, she protected Defendant, who was her boyfriend at the time, and did not want anyone to get into trouble. However, she stated that her testimony at trial was the true version of the facts.

Jakobe testified that when he heard the argument, he also went outside and stood on the porch and recalled that Rahquel and Defendant rushed outside with him. He stated that Defendant was standing right behind and to the side of him on the porch, and he saw Defendant shoot Mel in the head. He testified that Defendant had the gun in his possession when he walked out of the house and that he "already pulled it out and had it coming already out the door." He also stated that Defendant said something, then fled through the house into the back yard and jumped the fence. He followed

him; but after Defendant jumped the fence, he returned to the front of the house and then left the scene before the police arrived.

Shreveport Police Detective Melvin Smith interviewed Tina, Beko, Rahquel and Brionna at the police station, and Defendant was identified in a photo lineup. Dr. Long Jin, the coroner, testified that the victim died from a single gunshot wound to his right temple. One projectile was recovered from his cerebellum during the autopsy.

Shreveport Police Corporal Jonathan Varnell investigated the crime scene and located a single expended .380 caliber cartridge casing. Mel's car was searched, and his wallet, driver's license and other cards were found on the front driver's side floorboard. Beko's residence was searched and a magazine of a rifle-style weapon with live rounds in it was recovered; however, no firearms were recovered from inside the residence. A warrant was issued for Defendant's arrest.

Defendant was arrested on April 12, 2022, after a person called the Shreveport Police Department and stated that a man was at her home, who she believed had an outstanding warrant. The police went to that house and were admitted by the person who had called. Defendant was found lying in a bed, and a gun was retrieved from under the mattress, but it did not match the murder weapon, which was never found.

A unanimous jury found Defendant guilty as charged of second degree murder. A motion for new trial was filed and denied. Defendant was sentenced to life in prison without benefit of parole, probation or suspension of sentence. He filed a motion to reconsider sentence, and it was also denied. Defendant appeals his conviction.

4

**DISCUSSION**

Defendant argues the evidence introduced at trial was insufficient to prove him guilty of the second degree murder of Mel. He contends that the witnesses at trial gave contradictory evidence and that there was no physical evidence corroborating their testimony. He further argues that the murder could have been committed by Jakobe and that all the sisters framed him for the murder in order to protect Jakobe from prosecution.

The state argues that the evidence at trial, including the testimony of eyewitnesses, was sufficient to prove that Defendant shot and killed Mel and did so with the specific intent to kill or inflict bodily harm. It contends that the discrepancies in the testimony pointed out by Defendant are minor; and on the most salient issue of who had the gun in his hand at the time the shot was fired, all agreed it was Defendant. Considering the evidence in the light most favorable to the prosecution, it asserts it proved Defendant guilty of second degree murder beyond a reasonable doubt.

The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); *State v. Tate*, 01-1658 (La. 5/20/03), 851 So. 2d 921, *cert. denied*, 541 U.S. 905, 124 S. Ct. 1604, 158 L. Ed. 2d 248 (2004). This standard, now codified in La. C. Cr. P. art. 821, does not afford the appellate court with a means to substitute its own appreciation of the evidence for that of the fact finder. *State v. Pigford*, 05-0477 (La. 2/22/06), 922 So. 2d 517; *State v. Johnson*, 55,254 (La. App. 2 Cir. 8/9/23), 370 So. 3d 91.

5

Appellate courts neither assess the credibility of witnesses nor reweigh evidence. *State v. Smith*, 94-3116 (La. 10/16/95), 661 So. 2d 442. Rather, the reviewing court affords great deference to the jury's decision to accept or reject the testimony of a witness in whole or in part. *State v. Gilliam*, 36,118 (La. App. 2 Cir. 8/30/02), 827 So. 2d 508, *writ denied*, 02-3090 (La. 11/14/03), 858 So. 2d 422. Where there is conflicting testimony concerning factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. *State v. Allen*, 36,180 (La. App. 2 Cir. 9/18/02), 828 So. 2d 622, *writ denied*, 02-2595 (La. 3/28/03), 849 So. 2d 566, *writ denied*, 02-2997 (La. 6/27/03), 847 So. 2d 1255, *cert. denied*, 540 U.S. 1185, 124 S. Ct. 1404, 158 L. Ed 2d 90 (2004).

Second degree murder is the killing of a human being when the offender has a specific intent to kill or to inflict great bodily harm. La. R.S. 14:30.1(A). Specific criminal intent is that state of mind that exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act. La. R.S. 14:10. Specific intent need not be proven as a fact; it may be inferred from the circumstances of the transaction and the actions of the defendant. *State v. Graham*, 420 So. 2d 1126 (La. 1982). Specific intent to kill may be inferred from a defendant's act of pointing a gun and firing at a person. *State v. Seals*, 95-0305 (La. 11/25/96), 684 So. 2d 368. It may also be inferred from the extent and severity of the victim's injuries and the defendant's use of a deadly weapon to produce those injuries. *State v. Jackson*, 55,312 (La. App. 2 Cir. 11/15/23), 374 So. 3d 354.

6

We find that there was sufficient evidence to support Defendant's conviction for second degree murder. Every witness testified that he or she saw Defendant shoot the unarmed victim or, alternatively, saw him holding the gun pointed at the victim after the shot was fired. The discrepancies between the testimonies of the various witnesses were extremely slight and had no bearing on who was the perpetrator of the crime. The state proved every element of the crime; and, therefore, it was entirely reasonable for the jury to conclude beyond a reasonable doubt that Defendant committed second degree murder. For these reasons, the assignment of error is without merit.

## CONCLUSION

For the foregoing reasons, we affirm the conviction and sentence of Defendant Archille Parrel Holmes, Jr.

**AFFIRMED.**