DREW, J.
 

 | defendant Bobby Wallace, Jr., was convicted of possession of Schedule II CDS, over 28 grams but less than 200 grams of cocaine, a violation of La. R.S. 40:967(F)(l)(a). He was adjudicated a third felony habitual offender and sentenced to life imprisonment at hard labor without benefit of suspension of sentence, probation, or parole. Wallace was acquitted of illegal use of weapons, La. R.S. 14:94(A) and (B).
 

 Defendant Glenn Young was convicted of possession of Schedule II CDS, over 28 grams but less than 200 grams of cocaine, a violation of La. R.S. 40:967(F)(l)(a). He was adjudicated a third felony habitual offender and sentenced to serve 50 years at hard labor, all without benefit of suspension of sentence, probation, or parole.
 

 Young was also convicted of illegal use of weapons, a violation of La. R.S. 14:94(A) and (B), and sentenced to a concurrent 50 years at hard labor, all without benefits.
 

 Both defendants appeal. We affirm all convictions, as well as the sentence imposed upon Wallace. We amend and affirm Young’s sentence for his drug conviction, eliminating any parole restriction after the initial five years of his sentence. Young’s sentence for illegal use of weapons far exceeds his statutory exposure, so we must vacate that séntenee and remand.
 

 FACTS
 

 The charges against these men arose when a feud between present and former gang members led to gunfire on the streets of Shreveport.
 

 One of the victims, Marcus “Donut” Thomas, testified that:
 

 • as a youth in the early 1990s, he had been a member of the Shreveport
 
 *1146
 
 “Rollin 60s” street gang associated with the Crip gang faction;
 

 |⅞* he has a long criminal history;
 
 [1]
 

 • he first went to prison in 1992 for illegal use of weapons;
 

 • he left the gang lifestyle in the mid-1990s when released from prison;
 

 • he remained acquainted, however, with many gang members;
 

 • the defendants and many of Donut’s family were gang members;
 

 • bad blood developed between him and the gang when he refused to “take a charge” for Stevie Young, the first cousin of defendants;
 

 • Stevie Young was convicted of the referenced drug offense and sentenced to serve 24 years in federal prison;
 

 • he (Donut) feared retaliation from the Young/Thomas families;
 

 • on April 30, 2007, he and his girlfriend, Linnear Jordan, and her daughter went to the Quick Pack grocery store in Shreveport;
 

 • the three of them entered the store;
 

 • inside was Greg Young, Rollin 60s member, a cousin of defendants;
 

 • he and Greg began arguing, which almost led to physical violence;
 

 • Greg refused to fight, driving from the store with another man;
 

 • as he (Donut) drove down David Raines Road near Victor Street, shots came from a group of men who were standing beside the road;
 

 • several bullets hit the SUV;
 

 • he sped off as his girlfriend successfully protected her child;
 

 • despite the hail of bullets,
 
 [2]
 
 no one in his SUV was hit;
 

 • when questioned by Shreveport Police Department (“SPD”) officers, he first identified only Greg Young and Bobby Wallace as the shooters, but later added Glenn Young
 
 [3]
 
 as a shooter;
 

 Is*he attributed this discrepancy to the immediate trauma of the event;
 

 • he could not recall what type of guns the other men had; and
 

 • he told the SPD that Wallace and both Youngs lived on Hattie Street.
 

 Police executed a search warrant for the house on May 7, 2007.
 

 Five people were inside the Hattie Street house at the time of the search: Kendra Young (Glenn Young’s sister), Anthony Wallace, Calvin Elie, defendant Bobby Wallace, Jr., and defendant Glenn Young. Police
 
 Mirandized
 

 [4]
 

 all subjects and took them outside during the search.
 

 The SPD recovered a plastic Baggie from under the cushions of the couch in the front room. It contained just over 31 grams
 
 [5]
 
 of powder cocaine. No fingerprints could be found on the Baggie.
 

 The officers looked into a kitchen cabinet and found a box of small sandwich bags, an open box of baking soda, a package of batteries, and a Glock .40-caliber handgun. Subsequent testing proved that
 
 *1147
 
 this was the handgun from which the spent casings at the scene had been fired.
 
 [6]
 

 Also found in the kitchen was a digital scale of a type commonly used for weighing drugs for resale.
 
 [7]
 
 Investigators found on the scale the fingerprint of defendant Bobby Wallace, Jr. The police also seized Cingular ^telephone invoices bearing Glenn Young’s address at that location.
 

 As the officers were about to transport the suspects to jail, Kendra Young, responding to urging from these two defendants, initially told them that “everything belonged to her.” SPD investigator Lee Scott asked Ms. Young whether she claimed the crime that went along with the gun, and she quickly changed her story to assert that the items belonged to Calvin Elie.
 

 All occupants were charged with possession of cocaine over 28 grams but less than 200 grams. Glenn Young and Wallace were also charged with illegal use of weapons. The two men were tried together on both charges.
 

 Calvin Elie pled guilty to possession of cocaine in January 2008. In exchange for his testimony against the other defendants, he received a two-year probated sentence. At the defendants’ trial, he testified that:
 

 • he was sleeping in a back room with Wallace when the police arrived;
 

 • despite his previous guilty plea, he denied that the drugs were his;
 

 • he previously heard Glenn Young say that he needed a “Reggie”;
 

 • he was unaware of any drug dealing at the Hattie Street residence;
 

 • the digital scales did not belong to him;
 

 • he did not know of the shooting and did not live with the Youngs; and
 

 • despite physical signs of drug abuse, he denied being a drug user.
 
 [8]
 

 A variety of police witnesses and forensic experts testified and explained that the lack of additional shell casings at the scene of the | sshooting could be attributed to the use of revolvers — which do not automatically eject spent casings — or the use of “shell catchers.” Thomas said at trial that three of the four men fired at him. Elie did not.
 

 The defendants chose to testify on their own behalf.
 

 Glenn Young told the jury that:
 

 • he lived on Hattie Street with Kendra Young
 
 [9]
 
 and with Calvin Elie;
 
 [10]
 

 • he had prior convictions in 2002 for possession of crack cocaine and for indecent behavior with a juvenile;
 

 • he was not employed at the time of the shooting;
 

 
 *1148
 
 • he had never been a member of the Rollin 60s street gang;
 

 • he was at home with his sister when he heard the shooting;
 

 • when the SPD executed the warrant, he was asleep in the back room;
 

 • Elie was asleep on the sofa in the front room when the police came;
 

 • Wallace was there to drive Kendra Young’s child to school;
 

 • he had never before seen the Glock handgun seized from his kitchen, nor did he know how the weapon came to be there;
 

 • he denied any knowledge of the drugs found in the sofa;
 

 • he “couldn’t recall” whether he had asked his sister to take the charges for the items found in the house; and
 

 • he denied knowing that the scale was in the house.
 

 Bobby Wallace testified that:
 

 • he was in the Rollin 60s until his manslaughter conviction at age 16;
 

 • he left the gang when he was released from custody in 1996;
 

 • he knew nothing of the shooting or the drugs at the Youngs’ home;
 

 |r,* at the time of the shooting, he was at his uncle’s girlfriend’s house;
 

 • he was on probation for a felony drug conviction at the time;
 

 • his probation was due to end the day after the warrant was executed;
 

 • Donut had always been an habitual liar;
 

 • he did not understand why Donut would lie about the shooting;
 

 • he knew nothing of any words that day between Donut and Greg;
 

 • Elie was a drug addict who lived at the Hattie Street address because his family had thrown him out due to his drug problem;
 

 • at the time the warrant was served, he was only at the Hattie Street residence to pick up Kendra’s child to take her to Head Start;
 

 • Elie was asleep on the couch when he arrived, and he (Wallace) was in the back of the house when the police entered the home;
 

 • he knew nothing about the gun or scale seized that day;
 

 • his fingerprint on the scale was entirely innocent;
 

 • he touched the scale at his grandmother’s house the day before, at which time he had told his cousin Marquae to get rid of the scale;
 

 • after he was arrested, SPD investigator Scott unsuccessfully attempted to drop the bag into Wallace’s open hand;
 
 [11]
 
 and
 

 • he denied asking Kendra Scott to “take the charges.”
 

 Marquae Wallace, cousin of Bobby Wallace, testified that Bobby had touched the digital scale at a location away from the Hattie Street address the day before the warrant was executed. He explained that after Bobby touched the scales, he (Mar-quae) left Bobby and then met Calvin Elie on the street. Marquae said that Elie had a bag of powder cocaine, which Elie identified as the same bag seized by police from the Young residence, so the |7two of them went to his cousin Kendra’s house (the Hattie Street address) and used some of the powder cocaine. Marquae said that he left the scales on the kitchen counter and forgot about them.
 

 A jury convicted both men of possession of over 28 grams but less than 200 grams of cocaine. The jury convicted Glenn
 
 *1149
 
 Young of illegal use of a weapon but acquitted Bobby Wallace of that charge.
 

 The state filed habitual offender bills against both men. In due course, they were each adjudicated as a third felony offender.
 

 The defendants filed a motion for new trial, citing inconsistencies in the testimony of two of the state’s witnesses. The trial court denied the motions in open court and immediately sentenced the defendants.
 

 Wallace was sentenced to a mandatory life sentence at hard labor without benefits.
 
 [12]
 

 Young, convicted on both charges, was sentenced to serve 50 years without benefits on each.
 
 [13]
 
 The sentencing range for his drug offense, after adjudication as an habitual offender, was 20 to 60 years at hard labor, with only the first five years to be served without benefits. The court took careful consideration of the factors under La. C. Cr. P. art. 894.1 before sentencing.
 

 Young received the same 50-year -concurrent sentence for his conviction for illegal use of weapons, which sentence exceeds his exposure of two years, with or without hard labor. We vacate the sentence for that lsoffense only, and remand for resentencing.
 

 DISCUSSION
 

 Sufficiency
 

 Our law is well settled as to reviewing convictions for sufficiency of the evidence.
 
 [14]
 

 
 *1150
 
 Young argues that his conviction for illegal use of weapons must be reversed. He cites inconsistencies in Thomas’s testimony, including his varying recollection of the number of people who were shooting at him, 19despite the finding of only six spent shell casings fired by a single weapon. Further, Young notes that no fingerprints were found on the seized gun and that he never had possession of the gun at the time of seizure.
 

 La. R.S. 14:94 provides, in pertinent part:
 

 A. Illegal use of weapons or dangerous instrumentalities is the intentional or criminally negligent discharging of any firearm, or the throwing, placing, or other use of any article, liquid, or substance, where it is foreseeable that it may result in death or great bodily harm to a human being.
 

 B. Except as provided in Subsection E, whoever commits the crime of illegal use of weapons or dangerous instrumentalities shall be fined not more than one thousand dollars, or imprisoned with or without hard labor for not more than two years, or both.
 

 Unquestionably there are internal and external variations in Thomas’s testimony and his reports to the police, and the physical evidence did not conclusively prove that more than one person fired at Thomas’s vehicle. Nevertheless, the jury saw photos of that vehicle and the damage that was unquestionably caused by a fusillade of bullets. Further, the .40-caliber handgun retrieved from Young’s house was proven to be the weapon that marked the shell casings left behind at the scene of the shooting. Thomas specifically identified Glenn Young as one of the three shooters and described the type of weapon being used by Young.
 

 The jury chose to believe Thomas and to disbelieve Glenn Young as to Young’s participation in the crime. As regards Young, Thomas’ testimony had little internal contradiction and bore no irreconcilable conflict with the physical evidence seized from Young’s house. The evidence is sufficient to convict Glenn Young of illegal use of a weapon.
 

 | inBoth Young and Wallace argue that the evidence is insufficient to prove that they were in possession of the drugs found in the Youngs’ house. Essentially, they argue that they were merely present in the house, were not in close proximity to the drugs (or related paraphernalia) when police arrived to execute the warrant, and that some of the evidence showed that Calvin Elie, a known drug user, was sleeping in close proximity to the location where the drugs were found.
 

 The legal analysis for appellate review of possession cases is well settled.
 
 [15]
 

 
 *1151
 
 The jury was faced with a wide array of often contradictory testimony about these factors relevant to the possession of the narcotics. The evidence proved that the drugs were found in the house shared by defendant Young, his sister, and perhaps Calvin Elie, who had pled to possession of the Indrugs.
 
 [16]
 
 The bag of drugs did not bear any fingerprints; it was found under a couch in the main room, easily accessible by anyone.
 

 Although there was testimony that Elie was sleeping on this couch just prior to the entry of the police, he denied being there. The jury had the opportunity to observe him, a witness who exuded the appearance and demeanor of a crack addict, and the evidence supports the conclusion that the seldom employed and homeless Elie was not the only person with a connection to this significant quantity of cocaine.
 

 Elie explained that he had heard Glenn Young say that he needed a “Reggie,” which corresponds with the 81 grams of powder cocaine found in the couch. Moreover, only Wallace’s fingerprint was found on the digital scale, which was located in the kitchen cupboard near the gun,
 
 [17]
 
 plastic bags, baking soda, and batteries. Wallace admitted that this type of scale was often used to weigh drugs. His thin explanation as to how his fingerprint came to be on the scale was dubious. Both defendants implored Kendra Young to, in effect, “take the charges.” Viewed in the light most favorable to the state, the evidence was sufficient to prove beyond a reasonable doubt that defendants were in constructive possession of drugs.
 

 Wallace Sentencing: Trial court erred in not departing downward from the life sentence, in failing to specify which conviction was used to enhance the sentence, and in noncompliance with La. C. Cr. P. art. 894.1
 

 This third felony conviction
 
 [18]
 
 brought Wallace under the ambit of La. 112R.S. 15:529.1(A)(l)(b)(ii), which requires such a drastic sentence. The record does not reflect that Wallace filed a motion to reconsider sentence or formally requested a downward departure from the mandatory life sentence.
 

 Our law is well settled relative to the review of a sentence where no motion to reconsider is filed.
 
 [19]
 

 
 *1152
 
 Wallace argues that his is the rare case when a mandatory minimum sentence is excessive. He cites his testimony of leaving gang life and that people now call him “Preach,” because he counsels others to stay straight.
 

 This record is sufficient to conclude that the life sentence is not excessive so as to consider any departure from the legislative mandate. Wallace was on probation at the time the police executed the warrant, yet he freely associated with a known crack addict. He was engaged in illicit activity with Glenn Young at Young’s residence. After Wallace’s arrest, he implored Kendra Young to take the charges for the items found in the house and, at trial, he proffered a preposterous story about (among other things) a 1 ^police effort to put his fingerprints on the drug evidence. This sort of conduct does not suggest that a downward departure is warranted.
 

 He argues, without merit, that this record does not show which conviction was enhanced through the habitual offender proceedings. This is a simple inquiry, as he was convicted here only on the one drug offense.
 

 Wallace attacks the unarticulated reasons for sentencing, in violation of La. C. Cr. P. art. 894.1. Such articulation is unnecessary where a sentence is mandated by law.
 
 State v. Burd,
 
 40,480 (La.App.2d Cir.1/27/06), 921 So.2d 219,
 
 writ denied,
 
 2006-1083 (La.11/9/06), 941 So.2d 35.
 

 Young’s Sentences: Claims of Excessiveness
 

 Young argues that his 50-year hard labor sentence, all without benefits, is excessive. His attorney made a detailed and impassioned plea for the minimum sentence, and after the imposition of sentence, he filed a motion to reconsider sentence, expressing the same arguments. The trial court denied that motion, citing reasons surrounding the commission of the illegal use of a weapon offense.
 

 La. R.S. 40:967(F)(l)(a) provides:
 

 (a) Any person who knowingly or intentionally possesses twenty-eight grams or more, but less than two hundred grams, of cocaine or of a mixture or substance containing a detectable amount of cocaine or of its analogues as provided in Schedule 11(A)(4) of R.S. 40:964, shall be sentenced to serve a term of imprisonment at hard labor of not less than five years, nor more than thirty years, and to pay a fine of not less than fifty thousand dollars, nor more than one hundred fifty thousand dollars.
 

 At the time of the offense, La. R.S. 15:529.1(A)(l)(b)(i) provided, in part:
 

 (b) If the third felony is such that upon a first conviction, the offender would be
 
 *1153
 
 punishable by imprisonment for any term |14less than his natural life then: (i) The person shall be sentenced to imprisonment for a determinate term not less than two-thirds of the longest possible sentence for the conviction and not more than twice the longest possible sentence prescribed for a first conviction[.]
 

 Neither of these sections restricts the offender’s right to parole.
 

 La. R.S. 40:967(G), however, provides:
 

 G. With respect to any person to whom the provisions of Subsection F are applicable, the adjudication of guilt or imposition of sentence shall not be suspended, deferred, or withheld, nor shall such person be eligible for probation or parole prior to serving the minimum sentences provided by Subsection F.
 

 The potential sentence for a basic violation of La. R.S. 40:967(F)(l)(a) is from 10 to 30 years at hard labor. By operation of the applicable habitual offender law, the enhanced sentence must be for a term of at least 20 years but not more than 60 years at hard labor, without benefits only for the first five years.
 

 The district court was without authority to order that Young’s entire sentence be served without benefit of parole. Accordingly, this court amends Young’s sentence to maintain the 50 years at hard labor, but requiring only the first five years to be served without benefit of suspension of sentence, probation, or parole.
 

 The trial court engaged in a thorough examination of the factors enumerated in La. C. Cr. P. art. 894.1, noting that Young was convicted of illegal use of a weapon at the same trial as for his drug offense. The court cited the extremely dangerous nature of his conduct, his gang membership, and the serious nature of his previous convictions, one of which involved |1Bdrugs. Worse, the instant drug offense was committed in the presence of a child and an unsecured, loaded weapon.
 

 The trial court’s sentence was appropriate for Young’s drug offense, but any restriction on parole beyond the five years allowed is illegal.
 

 Confusion over which conviction was enhanced for Young’s sentence
 

 There is none. The habitual offender bill clearly specifies that Young’s third offense was the instant drug conviction. Young argues that the trial court improperly sentenced him to serve 50-year hard labor concurrent sentences on both of his convictions. We agree.
 

 The weapons charge was not multi-billed, leaving maximum exposure for violation of La. R.S. 14:94(A) and (B) to be two years at hard labor.
 

 We remand this case for the imposition of a lawful sentence.
 

 Lack of written reasons for adjudication per La. R.S. 1S:529.1(D)(3)
 

 Both defendants complain of the trial court’s noncompliance with La. R.S. 15:529.1(D)(8), which requires,
 
 inter alia,
 
 that the court provide written reasons for its determination that an offender is an habitual offender. In this case, the trial court did not issue written reasons, but the error is harmless because the transcripts of the habitual offender proceedings show clear oral reasons and the sufficiency of the evidence presented.
 
 State v. James,
 
 41,069 (La.App.2d Cir.8/23/06), 938 So.2d 1191.
 

 Immediate sentencing after denial of motions for new trial without a waiver of the required 24-hour delay between denial and sentencing
 

 Both defendants argue that the trial court committed reversible error by
 
 *1154
 
 sentencing without observing the 24 hour delay required by La. C. Cr. P. |1fiart. 873.
 
 [20]
 
 Although it is true that the defendants did not waive the delays prior to the imposition of sentence, vacation of the sentences is not mandatory, as this is harmless error, with no prejudice shown.
 
 State v. White,
 
 404 So.2d 1202 (La.1981);
 
 State v. Bobo,
 
 46,225 (La.App.2d Cir.6/8/11),-So.3d -.
 

 DECREE
 

 We affirm the convictions of each defendant.
 

 We affirm the life sentence imposed upon Wallace for the enhanced drug conviction.
 

 We amend Young’s 50-year hard labor sentence on the enhanced drug conviction, so as to deny parole only for the first five years of the sentence. As amended, we affirm Young’s sentence for possession of the drugs.
 

 We vacate Young’s sentence relative to his conviction for illegal use of a weapon, and we remand that matter for resentenc-ing.
 
 [21]
 

 [1]
 

 . His convictions include two felonies and several misdemeanors.
 

 [2]
 

 . Witnesses said they heard about six shots. SPD officers retrieved six spent .40-caliber shell casings from the area where the shooters had been standing.
 

 [3]
 

 . His story as to the number of assailants varied as the investigation progressed, according to SPD detectives. He never alleged that a fourth person, "Little Cal,” actually shot at him.
 

 [4]
 

 .
 
 Miranda v. Arizona,
 
 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
 

 [5]
 

 . Thirty-one grams of cocaine, with a street value of about $700, is known in street parlance as a "Reggie,” relating to the jersey number of former Indiana Pacer star Reggie Miller.
 

 [6]
 

 . Although police also found an SKS rifle in a vehicle outside the house, no evidence tied the rifle to the shooting.
 

 [7]
 

 . Police found a bag of marijuana next to the scale, but because the marijuana charge was not being pursued during this trial, the court excluded that evidence and, apart from inadvertent mentions by witnesses, the jury was not aware of its discovery.
 

 [8]
 

 . A review of Elie's testimony as a whole reflects that of an unsophisticated and mentally slow drug abuser. A later police witness described Elie as physically appearing to be a crack user (his teeth and skin were in poor condition) and "simple.” The officer explained that a crack user like Elie would likely not have possession of such a large quantity of cocaine nor would he be likely to have powder cocaine because crack users typically do not use the powder form.
 

 [9]
 

 . Kendra Young is Glenn Young’s sister.
 

 [10]
 

 . Young testified that Elie, his first cousin, had lived with him for the seven months since his grandmother kicked him out of her house for drug usage.
 

 [11]
 

 . This allegation is bitterly denied by the investigator.
 

 [12]
 

 . The two predicate felony convictions for Wallace's adjudication were manslaughter and possession of Schedule I CDS with the intent to distribute.
 

 [13]
 

 . Young’s two predicate felony convictions for his adjudication were indecent behavior with a juvenile and simple possession of a Schedule II CDS.
 

 [14]
 

 . The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.
 
 Jackson v. Virginia,
 
 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979);
 
 State v. Tate,
 
 2001-1658 (La.5/20/03), 851 So.2d 921,
 
 cert. denied,
 
 541 U.S. 905, 124 S.Ct. 1604, 158 L.Ed.2d 248 (2004);
 
 State v. Carter,
 
 42,894 (La.App.2d Cir.1/9/08), 974 So.2d 181,
 
 writ denied,
 
 2008-0499 (La.11/14/08), 996 So.2d 1086. This standard, now legislatively embodied in La. C. Cr. P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder.
 
 State v. Pigford,
 
 2005-0477 (La.2/22/06), 922 So.2d 517;
 
 State v. Dotie,
 
 43,819 (La.App.2d Cir. 1/14/09), 1 So.3d 833,
 
 writ denied,
 
 2009-0310 (La.11/6/09), 21 So.3d 297. The appellate court does not assess the credibility of witnesses or reweigh evidence.
 
 State v. Smith,
 
 94-3116 (La.10/16/95), 661 So.2d 442. A reviewing court accords great deference to a jury’s decision to accept or reject the testimony of a witness in whole or in part.
 
 State v. Eason,
 
 43,788 (La.App.2d Cir.2/25/09), 3 So.3d 685,
 
 writ denied,
 
 2009-0725 (La.12/11/09), 23 So.3d 913;
 
 State v. Hill,
 
 42,025 (La.App.2d Cir.5/9/07), 956 So.2d 758,
 
 writ denied,
 
 2007-1209 (La.12/14/07), 970 So.2d 529.
 

 The
 
 Jackson
 
 standard is applicable in cases involving both direct and circumstantial evidence. An appellate court reviewing the sufficiency of evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that defendant was guilty of every essential element of the crime.
 
 State v. Sutton,
 
 436 So.2d 471 (La.1983);
 
 State v. Speed,
 
 43,786 (La.App.2d Cir. 1/14/09), 2 So.3d 582,
 
 writ denied,
 
 2009-0372 (La.11/6/09), 21 So.3d 299.
 

 Where there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency.
 
 State v. Speed, supra; State v. Allen,
 
 36,180 (La.App.2d Cir.9/18/02), 828 So.2d 622,
 
 writs
 
 
 *1150
 

 denied,
 
 2002-2595 (La.3/28/03), 840 So.2d 566, 2002-2997 (La.6/27/03), 847 So.2d 1255,
 
 cert. denied,
 
 540 U.S. 1185, 124 S.Ct. 1404, 158 L.Ed.2d 90 (2004).
 

 In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness’s testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion.
 
 State v. Gullette,
 
 43,-032 (La.App.2d Cir.2/13/08), 975 So.2d 753;
 
 State v. Burd,
 
 40,480 (La.App.2d Cir.1/27/06), 921 So.2d 219,
 
 writ denied,
 
 2006-1083 (La.11/9/06), 941 So.2d 35.
 

 [15]
 

 . To support a conviction for possession of a controlled dangerous substance, the state must prove the defendant was in possession of the illegal drug and that he knowingly possessed the drug.
 
 State v. White,
 
 37,261 (La.App.2d Cir.6/25/03), 850 So.2d 987. The state need not prove that the defendant was in physical possession of the drugs found; constructive possession is sufficient to support a conviction.
 
 State v. Toups,
 
 2001-1875 (La.10/15/02), 833 So.2d 910. Constructive possession is defined as having an object subject to one’s dominion and control, with knowledge of its presence, even though it is not in one’s physical possession.
 
 State v. Mingo,
 
 42,407 (La.App.2d Cir.9/19/07), 965 So.2d 952;
 
 State v. White, supra.
 
 The mere presence of a person in the place where contraband is found or the mere association with
 
 *1151
 
 another person possessing contraband is not sufficient to prove constructive possession.
 
 State
 
 v.
 
 Harris,
 
 94-0970 (La.12/8/94), 647 So.2d 337;
 
 State v. Brown,
 
 42,188 (La.App.2d Cir.9/26/07), 966 So.2d 727,
 
 writ denied,
 
 2007-2199 (La.4/18/08), 978 So.2d 347.
 

 Guilty knowledge is an essential element of a possession charge, and such knowledge may be inferred from the circumstances.
 
 State v. Toups, supra; State v. Robbins,
 
 43,129 (La.App.2d Cir.3/19/08), 979 So.2d 630. A determination of whether the defendant was in possession depends on the "peculiar facts” of each case, which may include the following: (1) the defendant’s knowledge that the contraband is in an area; (2) his relationship with the person found to be in actual possession; (3) his access to the area where the drugs were found; (4) evidence of recent drug use; and (5) the defendant’s physical proximity to the contraband.
 
 Id.
 
 Further, a defendant may have constructive possession if he willfully and knowingly shares the right to control the contraband with another.
 
 Id.
 

 [16]
 

 . Elie explained, in effect, that this was a "best interest” plea, to get out of jail.
 

 [17]
 

 . Scientific testimony proved that this gun fired the recovered bullet hulls.
 

 [18]
 

 . The nature of his prior offenses mandated a life sentence upon adjudication. The lesser nature of Young's prior offenses did not expose him to this fate.
 

 [19]
 

 . When a defendant fails to timely file a motion to reconsider sentence under La. C. Cr. P. art. 881.1, the appellate court’s review is limited to the bare claim of constitutional excessiveness.
 
 State v. Mims,
 
 619 So.2d 1059 (La.1993);
 
 State v. Jones,
 
 41,449 (La.App.2d Cir.9/20/06), 940 So.2d 61. A sentence violates La. Const. Art. I, § 20, if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and need
 
 *1152
 
 less imposition of pain and suffering.
 
 State v. Smith,
 
 2001-2574 (La.1/14/03), 839 So.2d 1;
 
 State
 
 v.
 
 Dorthey,
 
 623 So.2d 1276 (La.1993). A sentence is deemed grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice or makes no reasonable contribution to acceptable penal goals.
 
 State v. Guzman,
 
 1999-1528, 1999-1753 (La.5/16/00), 769 So.2d 1158.
 

 Although the Louisiana Supreme Court has held that courts have the power to declare a mandatory minimum sentence excessive under Art. I, § 20 of the Louisiana Constitution, this power should only be exercised in rare cases and only when the court is firmly convinced that the minimum sentence is excessive.
 
 State v. Ponsell,
 
 33,543 (La.App.2d Cir.8/23/00), 766 So.2d 678,
 
 writ denied,
 
 2000-2726 (La.10/12/01), 799 So.2d 490.
 

 The mandatory life sentences the habitual offender law requires are presumptively constitutional and should be accorded great deference by the judiciary.
 
 State v. Johnson,
 
 97-1906 (La.3/4/98), 709 So.2d 672;
 
 State v. Wade,
 
 36,295 (La.App.2d Cir.10/23/02), 832 So.2d 977,
 
 writ denied,
 
 2002-2875 (La.4/4/03), 840 So.2d 1213.
 

 [20]
 

 . La. C. Cr. P. Art. 873:
 

 If a defendant is convicted of a felony, at least three days shall elapse between conviction and sentence. If a motion for a new trial, or in arrest of judgment, is filed, sentence shall not be imposed until at least twenty-four hours after the motion is overruled. If the defendant expressly waives a delay provided for in the article or pleads guilty, sentence may be imposed immediately.
 

 [21]
 

 . The sentence cannot exceed two years, with or without hard labor.