CARAWAY, J.
h Following a bench trial, Lorenzo Jefferson was convicted of second degree murder and attempted second degree murder (La. R.S. 14:30.1, 14:27). At the sentencing hearing, Jefferson was given the mandatory life sentence at hard labor without benefit of parole, probation, or suspension of sentence for his second degree murder conviction. In addition, the defendant was sentenced to 46 years at hard labor without benefit of probation, parole, or suspension of sentence for the his attempted second degree murder conviction. These sentences were ordered to be served concurrently. He appeals his conviction and sentences.

Facts

Lorenzo Jefferson was arrested for the shooting of Noel Steele (“Steele”) and Gary Maxie, Jr. (“Maxie”). The crime occurred as the result of a shooting in the defendant’s backyard, 3120 Lakeshore Drive, around three in the morning on July 13, 2009. While the house was his residence, Jefferson also rented rooms in the house for commercial purposes. Steele, the defendant’s friend and one of *1010 the victims, maintained a barber shop and lived there on a part-time basis. This residence also contained a music studio and tattoo shop. As a result of all this activity, the backyard was used as a parking lot.
Around two in the morning on July 13, 2009, Steele needed to drop off some supplies at his other residence, but he did not own a car. Since Steele and his fíanceé, Patsy Davis (“Davis”), had just had a very heated disagreement, Davis refused to let him borrow her car. Thereafter, Jefferson 12gave him permission to borrow his Jeep Cherokee. Sometime after Steele left, Jefferson called him and angrily demanded that he immediately bring his car back.
On his way home, Steele had to stop at a gas station, where he saw his friend, Max-ie. After Steele explained that he had to return Jefferson’s car, Maxie and his passenger, Demondrick Jackson (“Jackson”), followed Steele to the house on Lakeshore Drive because Maxie wanted to further talk to Steele about something. While Steele went to return the keys, Maxie and Jackson stayed in the car in the backyard.
While washing dishes in the kitchen, Davis noticed that Maxie’s car had arrived in the parking lot in the backyard. As she turned to inform Jefferson of the visitor, he was already moving toward the backyard and Davis noticed that Jefferson had a gun sticking out of his pants.
When Steele approached the back door, the defendant stood in the doorway, blocking his entrance. At this time, Jackson testified he saw a gun sticking out of Jefferson’s pants; yet, Steele testified that he did not see the gun. While the two were talking, Steele testified that Jefferson just suddenly turned around and shot him. After the first shot, Steele immediately jumped from the elevated porch area and crawled under the house to hide. After clearly seeing Jefferson shoot Steele, Jackson testified that he climbed out of Maxie’s car through the rear door on the driver’s side, the farthest side away from the defendant’s location, and ran. As he was running, Jackson stated that he heard Maxie say, “hold up,” and then Jackson heard several more shots being fired.
| sAll of the witnesses testified that they heard at least two or three more shots, but none of them saw Jefferson shoot Maxie, who was killed. Davis, who was in the kitchen, heard the first shot and froze. After all shots had been fired, Jefferson came back inside and Davis asked him what happened. According to her, the defendant went to a locked closet and soon returned with an AK-47. Davis then saw Jefferson drive away in Maxie’s white Toyota Corolla. After the defendant left and Davis realized that Maxie had been shot, she called the police and reported the incident.
After fleeing the scene of the shooting, Jefferson ran a red light and hit another vehicle. Jefferson attempted to flee the scene of that accident in the vehicle, but the car died a few blocks away forcing the defendant to flee on foot. Ultimately, Jefferson was arrested at Willis Knighton Hospital on Greenwood Road after police received a call regarding a suspicious person. Upon locating the defendant and giving him his Miranda[1] rights, police searched his person and found car keys. Officers soon discovered that these keys started the white Toyota Corolla that had been involved in the hit and run. The car had blood on the door and was owned by the victim, Maxie.
Jefferson was taken to police headquarters, and before he gave his statement, he was again advised of his rights. According *1011 to the defendant, Davis opened the back door and then “all hell broke loose.” The defendant stated that he saw a black man with braids fleeing the scene and assumed this man or Davis was the shooter. After the shooting started, the defendant 14stated that he got in Maxie’s vehicle in order to escape. At all times, the defendant has denied his involvement in the shooting.
On September 25, 2009, the grand jury charged Jefferson by bill of indictment for the second degree murder of Maxie, in violation of La. R.S. 14:30.1. This indictment was amended on April 1, 2011, and at this time, the defendant was additionally charged with the attempted second degree murder of Steele.
After a two-day bench trial, the defendant was convicted as charged. On June 9, 2011, Jefferson was sentenced to life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence for his second degree murder conviction to run concurrent with his 46-year sentence for the attempted second degree murder conviction. After the denial of a post-verdict judgment of acquittal motion, where the defendant argued that the state did not prove beyond a reasonable doubt all the elements of the convictions, this appeal ensued.

Discussion

Jefferson argues that the evidence produced at trial was insufficient to support his convictions because the state failed to negate the reasonable probability of mis-identification. Secondly, the defendant argues that the state’s case was based entirely on circumstantial evidence that did not exclude every reasonable hypothesis of innocence, including the fact that someone else was the shooter. Finally, the defendant argues that the state’s evidence, at best, supported a conviction for manslaughter.
IsThe critical inquiry in reviewing sufficiency of the evidence arguments is “whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of the fact could have found the essential elements of the crime beyond a reasonable doubt.” Jackson v. Virginia, 448 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Rhodes, 29,-207 (La.App.2d Cir.1/22/97), 688 So.2d 628, writ denied, 97-0753 (La.9/26/97), 701 So.2d 980. When the direct evidence is viewed in the light most favorable to the prosecution, “the facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that defendant was guilty of every essential element of the crime.” State v. Sutton, 436 So.2d 471 (La.1983); State v. Speed, 43,786 (La.App.2d Cir. 1/14/09), 2 So.3d 582, writ denied, 09-0372 (La.11/6/09), 21 So.3d 299. This standard, now legislatively embodied in La.C.Cr.P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. State v. Pigford, 05-0477 (La.2/22/06), 922 So.2d 517; State v. Robertson, 96-1048 (La.10/4/96), 680 So.2d 1165. The appellate court does not assess the credibility of witnesses or reweigh evidence. State v. Smith, 94-3116 (La.10/16/95), 661 So.2d 442.
In cases involving a defendant’s claim that he was not the person who committed the crime, the Jackson rationale requires the state to negate any reasonable probability of misidentification in order to carry its burden of proof. State v. Hughes, 05-0992 (La.11/29/06), 943 So.2d 1047; State v. Powell, 27,959 (La. App.2d Cir.4/12/96), 677 So.2d 1008, writ denied, 96-1807 (La.2/21/97), 688 So.2d 520. Positive identification by only one *1012 witness may be sufficient to support a defendant’s conviction. State v. Weary, 03-3067 (La.4/24/06), 931 So.2d 297, cert. denied, 549 U.S. 1062, 127 S.Ct. 682, 166 L.Ed.2d 531 (2006); State v. Youngblood, 41,976 (La.App.2d Cir.5/9/07), 957 So.2d 305, writ denied, 07-1226 (La.12/14/07), 970 So.2d 530.
In all cases where an essential element of the crime is not proven by direct evidence, La. R.S. 15:438 applies. As an evidentiary rule, it restrains the fact finder in the first instance, as well as the reviewer on appeal, to accept as proven all that the evidence tends to prove and then to convict only if every reasonable hypothesis of innocence is excluded. Whether circumstantial evidence excludes every reasonable hypothesis of innocence presents a question of law. State v. Shapiro, 431 So.2d 372 (La.1982); State v. Hammontree, 363 So.2d 1364 (La.1978); State v. Van Sales, 38,138 (La.App.2d Cir.3/3/04), 867 So.2d 849, writ denied, 04-1305 (La.4/22/05), 899 So.2d 569.
La. R.S. 14:30.1 provides:
A. Second degree murder is the killing of a human being:
(1) When the offender has a specific intent to kill or to inflict great bodily harm; ...
B. Whoever commits the crime of second degree murder shall be punished by life imprisonment at hard labor without the benefit of parole, probation, or suspension of sentence.
La. R.S. 14:27 provides:
A. Any person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to|7commit the offense included; and it shall be immaterial whether, under the circumstances, he would have actually accomplished his purpose.
[[Image here]]
C. An attempt is a separate but lesser grade of the intended crime; and any person may be convicted of an attempt to commit a crime, although it appears on the trial that the crime intended or attempted was actually perpetrated by such person in pursuance of such attempt.
D. Whoever attempts to commit any crime shall be punished as follows: (l)(a) If the offense so attempted is punishable by death or life imprisonment, he shall be imprisoned at hard labor for not less than ten nor more than fifty years without benefit of parole, probation, or suspension of sentence.
Regarding the attempted second degree murder of Steele, Jackson testified that he saw Jefferson shoot Steele. Steele testified he was shot when the defendant “walked away from me, he turned around and immediately just bam, you know, like a draw or something.” Steele was thus certain that the defendant, his friend for over 15 years, was responsible for shooting and almost killing him. In addition, Davis testified that the defendant went outside with a gun immediately prior to her hearing the gun shots. Thus, the state offered sufficient evidence that the defendant shot Steele at close range, indicating an intent to inflict great bodily harm.
With respect to the victim, Maxie, the state presented sufficient evidence for the trier of fact to conclude that Jefferson fired several shots at the victim and ultimately killed him. Jackson positively identified the defendant in a photo lineup and at trial as the person who shot Steele. In addition, Jackson testified that he heard Maxie talking to the defendant after the initial shooting of Steele and prior to sev *1013 eral more gunshots. While he did not see Jefferson shoot Maxie, Jackson testified that the defendant was the only person with a gun and the only voice that he heard when Maxie |8was shot. Furthermore, Jackson testified that prior to that night he had never met Davis, Steele, or the defendant.
At trial, Steele also testified about the events surrounding Maxie’s death. After he was shot, he testified that he hid under the house when he realized his injuries prevented him from running. While he was hiding, Steele heard Maxie ask the defendant why he had shot Steele. At the time, Steele heard at least two more shots being fired.
While no gun was ever discovered in this case, the state did produce evidence linking the defendant to the shooting of Maxie. First of all, Jefferson was the only individual identified with a weapon which was seen by Davis and Jackson. In addition, the state provided expert testimony that all of the bullets were fired from the same gun.
In addition to the eyewitness testimony, the state produced forensic evidence revealing a close range shooting of Maxie while he was seated in the ear and the DNA results of the blood on the car matching Maxie’s blood. Additionally, a phone found in the car was determined to belong to the defendant.
All of the evidence presented showed that Maxie was shot in close range, indicating a specific intent to kill the victim. Since the defendant was the only person identified with a gun during the shooting and identified driving away with the victim’s car, it was reasonable for the trial court to find that the state met its burden of proving that Jefferson was guilty of second degree murder. There was nothing in the record to support a ^manslaughter charge nor was there evidence in the record that the defendant acted in self-defense. Accordingly, the convictions are affirmed.
Jefferson also argues that his sentences are excessive. The trial court sentenced the defendant to the mandatory life, sentence at hard labor without the benefit of probation, parole, or suspension of sentence for the second degree murder conviction. In addition, the trial court sentenced the defendant to 46 years for attempted second degree murder and held that the sentences were to run concurrently; Jefferson failed to file a motion to reconsider sentence nor did he formally request a downward departure from the mandatory life sentence.
When a defendant fails to timely file a motion to reconsider sentence under La.C.Cr.P. art. 881.1, the appellate court’s review is limited to the bare claim of constitutional excessiveness. State v. Mims, 619 So.2d 1059 (La.1993); State v. Jones, 41,449 (La.App.2d Cir.9/20/06), 940 So.2d 61. A’ sentence is constitutionally excessive in violation of La. Const. art. I, § 20, if it is grossly out of proportion to the severity of the offense or nothing more than a needless and purposeless imposition of pain and suffering. State v. Smith, 01-2574 (La.1/14/03), 839 So.2d 1; State v. Bonanno, 384 So.2d 355 (La.1980); State v. Cunningham, 431 So.2d 854 (La.App. 2d Cir.1983), writ denied, 438 So.2d 1112 (La. 1983). A sentence is deemed grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it - shocks the sense of justice or makes no reasonable contribution to acceptable penal goals. State v. Weaver, 01-0467 (La.1/15/02), 805 So.2d 166; State v. Guzman, 99-1528, 99-1753 (Lag/16/00),10 769 So.2d 1158; State v. Robinson, 40,983 (La.App.2d Cir.1/24/07), 948 So.2d 379.
*1014 Although the Louisiana Supreme Court has held that courts have the power to declare a mandatory minimum sentence excessive under Art. I § 20 of the Louisiana Constitution, this power should be exercised only in rare eases and only when the court is firmly convinced that the minimum sentence is excessive. State v. Wallace, 46,422 (La.App.2d Cir.8/10/11), 71 So.3d 1142; State v. Ponsell, 33,543 (La. App.2d Cir.8/23/00), 766 So.2d 678, writ denied, 00-2726 (La.10/12/01), 799 So.2d 490.
While Wallace dealt with mandatory sentences under the habitual offender law, it implied that all mandatory sentences are presumptively constitutional and should be accorded great deference by the judiciary. Wallace, supra; State v. Wade, 36,295 (La. App.2d Cir.10/23/02), 832 So.2d 977, rnit denied, 02-2875 (La.4/4/03), 840 So.2d 1213. The assertion that the mandatory life sentence for second degree murder is a violation of the prohibition against excessive punishment in the Louisiana Constitution has been repeatedly rejected. State v. Bryant, 29,344 (La.App.2d Cir.5/7/97), 694 So.2d 556; State v. Parker, 416 So.2d 545 (La.1982); State v. Brooks, 350 So.2d 1174 (La.1977).
At the sentencing hearing, the trial court noted that the sentence for second degree murder was mandatory. In addition, the trial court gave some review of the sentencing guidelines of La.C.Cr.P. art. 894.1 for the attempted second degree murder conviction. In particular, the trial court noted several considerations for the defendant’s sentence including: the | n defendant’s two prior offenses involving firearms, including a felony conviction; the violent nature in which the shootings were conducted and the lethal effects of his actions; and the fact that the shootings involved a risk of death or great bodily harm to more than one person.
The record shows that Jefferson is a repeat offender and convicted felon. All of his convictions illustrate his propensity for committing violent crimes with firearms, and illustrate an escalation in criminal behavior. Jefferson’s first conviction was a misdemeanor offense and his latest conviction was a felony drug offense.
Aside from prior criminal history, Jefferson’s actions and demeanor illustrate that neither sentence is constitutionally excessive. The defendant shot Steele, his friend of 15 years, at close range for no apparent reason, save potentially a disagreement about the use of the defendant’s car. Steele was forced to undergo surgery and spent several weeks in the hospital as a result of his gunshot wound.
Although his motive is unknown, it is clear that the defendant shot at Maxie several times before moving close enough in order to fatally wound him. After killing Maxie, the defendant then took the victim’s car and fled the scene of the crime.
The trial court properly applied the mandatory life sentence in regards to the second degree murder of Maxie. Furthermore, Jefferson’s criminal history, demeanor, actions, and the nature of the crime itself support the trial court’s 46-year sentence for the attempted second degree murder of Steele. While the defendant’s sentence is only four years below the statutory 1 ^maximum for this offense, this sentence is not grossly disproportionate nor does it shock one’s sense of justice, especially considering that this sentence will run concurrently with his mandatory life sentence.
Lastly, the defendant submitted a pro se brief and requested an error patent review of the entire record with particular review of his original indictment and amended indictment. This request is un *1015 necessary since such a review is made automatically in all criminal cases. State v. Bryant, supra; State v. Stamper, 615 So.2d 1359 (La.App. 2d Cir.1993), modified on other grounds, 624 So.2d 1208 (La. 1993). Accordingly, the record was reviewed and no errors patent were found.

Conclusion

Based on the foregoing, we affirm the trial court’s rulings. The state’s evidence was sufficient to support a finding that Jefferson committed the acts of second degree murder and attempted second degree murder. Furthermore, we do not find that the trial court’s sentences were constitutionally excessive. As a result, we affirm the defendant’s convictions and sentences.
AFFIRMED.

. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).