HARRISON, Judge Pro Tem.
hThe defendant, Sterling Germane Robinson, was convicted of armed robbery. He was subsequently adjudicated a fourth felony offender and sentenced to a term of life imprisonment without parole, probation or suspension of sentence. The defendant appeals. We affirm the defendant’s conviction and sentence.
FACTS
On December 22, 2010, the Family Dollar Store in Columbia, Louisiana, was robbed by two black males wearing dark clothes and masks. The store manager, Wendy Taylor, and an employee, Michelle Dilley, were held at gunpoint. Two money bags, a tote bag, and approximately $2,600 were taken during the robbery.[1] The robbers placed these items in a “cheap” garbage bag before they fled the store. Apparently unbeknownst to the robbers, there was a hole in the garbage bag, and rolls of coins and cash began falling out.
Deputies from the Caldwell Parish Sheriff’s Office arrived and began following the money trail inadvertently left by the robbers. A stocking mask and more rolls of coins and cash were found on the trail going through a nearby wooded area. The money trail led to a house on Curry Street. The deputies located more cash in the yard and under the skirting of the house.
In the yard, the officers encountered a black male named Donald Jones and a female companion who were exiting the house. Jones gave them permission to search the house. There was more cash on the living room floor. While clearing the house, they located the defendant on a bed |2or cot in a bedroom. He was removed from the house while the law enforcement officers continued to search. In the same bedroom, the deputies also found a black plastic garbage bag and the tote bag taken during the robbery. A pair of black jogging pants was found on the bed. When a deputy pulled back the mattress, he discovered another black male, later identified as Gerald Tatum, hiding under the bed. Tatum was immediately taken into custody. Between the mattress and the springs, the officers found two bank bags taken during the robbery, as well as a head wrap worn by one of the robbers and more cash. No weapon was recovered.
The defendant and Tatum were arrested for the armed robbery of the Family Dollar Store.[2] Jones was arrested and charged as an accessory after the fact.
Following a jury trial in October 2011, the defendant was convicted as charged by *1032 a vote of 10 to 2. He filed motions for new trial and post verdict judgment of acquittal, both of which were denied by the trial court.
The defendant was subsequently adjudicated a fourth felony offender and given a mandatory sentence of life imprisonment without benefit of parole, probation or suspension of sentence.
The defendant appeals. Defense counsel asserts three assignments of error. Additionally, the defendant sets forth four pro se assignments of error, which primarily concern his adjudication as a fourth felony offender.
^SUFFICIENCY OF EVIDENCE

Law

The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 448 U.S. 807, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Tate, 2001-1658 (La.5/20/03), 851 So.2d 921, cert. denied, 541 U.S. 905, 124 S.Ct. 1604, 158 L.Ed.2d 248 (2004); State v. Carter, 42,894 (La.App.2d Cir.1/9/08), 974 So.2d 181, writ denied, 2008-0499 (La.11/14/08), 996 So.2d 1086. This standard, now legislatively embodied in La. C. Cr. P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. State v. Pigford, 2005-0477 (La.2/22/06), 922 So.2d 517; State v. Dotie, 43,819 (La. App.2d Cir.1/14/09), 1 So.3d 833, writ denied, 2009-0310 (La.11/6/09), 21 So.3d 297.
The Jackson standard is applicable in cases involving both direct and circumstantial evidence. When circumstantial evidence is used to prove the commission of the offense, La. R.S. 15:438 mandates, “assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence.” State v. Tatum, supra; State v. Dorsey, 2010-0216 (La.9/7/11), 74 So.3d 603, cert denied, — U.S.-, 132 S.Ct. 1859, 182 L.Ed.2d 658 (2012). This is not a separate test that applies instead of a sufficiency of the evidence test when | circumstantial evidence forms the basis of the conviction. State v. Dorsey, supra; State v. Cummings, 95-1377 (La.2/28/96), 668 So.2d 1132. Rather, all of the evidence, both direct and circumstantial, must be sufficient under Jackson to convince a rational juror that the defendant is guilty beyond a reasonable doubt. State v. Dorsey, supra.
In cases where the key issue is the defendant’s identity as the perpetrator, rather than whether the crime was committed, the state is required to negate any reasonable probability of misidentification. State v. Dorsey, supra.
The appellate court does not assess the credibility of witnesses or reweigh evidence. State v. Smith, 94-3116 (La.10/16/95), 661 So.2d 442. A reviewing court accords great deference to a jury’s decision to accept or reject the testimony of a witness in whole or in part. State v. Eason, 43,788 (La.App.2d Cir.2/25/09), 3 So.3d 685, writ denied, 2009-0725 (La.12/11/09), 23 So.3d 913; State v. Hill, 42,025 (La.App.2d Cir.5/9/07), 956 So.2d 758, writ denied, 2007-1209 (La.12/14/07), 970 So.2d 529.
In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness’s testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. State v. Gullette, 43,032 (La.App.2d *1033 Cir.2/18/08), 975 So.2d 753; State v. Burd, 40,480 (La.App.2d Cir.1/27/06), 921 So.2d 219, writ denied, 2006-1083 (La.11/9/06), 941 So.2d 35.
La. R.S. 14:64 defines armed robbery as the taking of anything of value belonging to another from the person of another or that is in the |fiimmediate control of another, by use of force or intimidation, while armed with a dangerous weapon.

Testimony

Ms. Dilley, the store employee, testified that two black males wearing masks entered the store. The taller robber was armed and took the manager, Ms. Taylor, into the office to get money from the safe. The shorter robber stayed with Ms. Dilley. The robbers also took money from the registers. Ms. Dilley described the robbers as wearing dark clothing. She said one wore jogging pants; she identified a pair of black jogging pants recovered from the house on Curry Street as being similar to the ones she saw. Likewise, she identified a mask shown to her as being similar to one used by the robbers, as well as another item she characterized as a “do-rag” worn by one of the robbers to cover his face. Although she initially testified that the robber with her wore gloves, she became uncertain of this during cross-examination.
Ms. Taylor, the store manager, testified that the taller robber shoved a gun in her face and forced her to open the office safe. She gave conflicting statements as to the caliber and size of the gun, but remained steadfast that it was a revolver. She also testified that she knew Donald Jones and that he was not one of the robbers.
The victims identified the two money bags and a tote bag recovered at the Curry Street house as having been taken in the robbery. Ms. Dilley stated that the robbers placed the stolen money in “one of the cheap Dollar Store trash bags”; she described the bags as “flimsy.” Both victims | (¡identified the black plastic bag found at the house as being similar to the one in which the robbers placed the money.
Four deputies testified about their roles in the investigation of the robbery. Upon his arrival at the store, Deputy Jessie Morris was asked to look around for evidence. He recounted finding cash, rolls of coins and a stocking mask along a trail near the store. Deputy Matthew Schulte testified that while Deputy Morris remained with those items, he and Deputy John Cummings followed the trail littered with cash to the house on Curry Street. There they encountered Jones and a woman as they left the house. They obtained Jones’ permission to search the residence. During their search, the deputies found the defendant lying on a bed in a bedroom. He was removed from the house and placed in a patrol unit.
Deputy Blake Wyles testified that he arrived at the house and noticed a hole in the skirting; money was scattered about the ground. He located more money under the house. He then assisted in searching the house. When he lifted the mattress on the bed, the first thing he observed was a money bag on the springs. He then discovered Tatum hiding underneath the bed. Tatum was taken into custody.
Deputy Sedric Meredith, the lead investigator on the case, testified about how the evidence was photographed and collected. He identified the photos showing the money trail from the store to the house and then photos of the house and evidence collected therein. As to the heights of the various suspects, he estimated that the defendant stood about his height, which is 5'9". He also stated that Tatum was taller than him, and that Jones, the man |7the defense attempted to implicate as a rob *1034 ber, was taller than Tatum.[3] In response to the defense’s insinuations that perhaps someone else left the house unobserved by the officers, Deputy Meredith testified that he did not see any other place to exit the house without going through the living room. While the house had another door, it appeared to him that no one had used it in years.

Discussion

In challenging the sufficiency of the evidence in this assignment of error, the defendant contends that the circumstantial evidence presented in this case does not exclude two possible hypotheses of innocence — that the store was robbed by Tatum and Donald Jones, the man who was exiting the house when the deputies arrived, or by Tatum and an unknown black male who was more than six feet in height.
In making this argument, the defendant refers to the testimony of the two victims, neither of whom could identify the defendant as one of the masked robbers. The victims could state only that the taller robber accompanied Ms. Taylor into the office at gunpoint to get money from the safe while the shorter, unarmed one stayed with Ms. Dilley. Ms. Taylor was asked about her prior testimony at Tatum’s trial that she did not think Tatum was as tall or skinny as the taller robber. The defendant argues that since Ms. Taylor could not identify Tatum (who was six feet tall) as the man who robbed her, Tatum must have been the robber with Ms. Dilley. Thus, the | ^defendant reasons that the robber with Ms. Taylor must have been Jones or an unknown black male who was more than six feet tall.
As to the defendant’s contention that Jones was one of the robbers, Ms. Taylor testified that she was positive that he was not. She stated that she had known Jones for eight years, that she was familiar with him, and that she had talked to him several times. She testified that the robber who put a gun to her face spoke to her, and he was not Jones. She further testified that Jones, who she estimated to be more than 6 feet tall, was taller than the robber who stayed with Ms. Dilley. The jury obviously found Ms. Taylor’s testimony to be credible.
As to the heights of the robbers in general, we note that the victims were thoroughly questioned at the defendant’s trial as to their observations and their prior statements on the subject. Among the statements upon which Ms. Dilley was cross-examined was her testimony at Tatum’s trial that Tatum appeared consistent with the taller robber. At the defendant’s trial, Ms. Dilley estimated that the robber next to her was 5'8" or 5'9" while the taller one was perhaps 6'4" or 6'5" in height.[4] (As noted previously, Deputy Meredith testified that the defendant was about 5'9".) The jury, which observed the witnesses and weighed their testimony, could have reasonably concluded from the testimony of the two victims that Jones was not involved in the robbery, that Tatum was the taller robber, and the shorter robber was approximately the same height as the defendant.
|aThe instant case involves a short time span between the robbery and the apprehension of the defendant and Tatum. The sheriffs office was notified of the robbery by Ms. Taylor’s husband, who was on the *1035 phone with her when the robbers entered the store and heard what was happening. The initial call was received at about 7:40 p.m., and testimony indicated that the first officers would have arrived on the scene within two to three minutes. Deputy Schulte testified that it took him 12 to 15 minutes after receiving the call to arrive at the store. Thereafter, he was one of the officers who followed the money trail to the Curry Street house, which he entered at about 8:20 p.m.
Law enforcement officers followed a trail of money stolen in the robbery to the house where the defendant was discovered lying on a bed. Shortly thereafter, officers discovered his codefendant hiding under the bed. Items associated with the robbery—including cash, money bags and a head wrap—were found concealed between the mattress, upon which the defendant had been lying, and the bed springs. Black jogging pants similar to those worn by one of the robbers were found on the bed. Also discovered on the floor of the room were a black plastic bag similar to the one used by the robbers to carry off the stolen money and a tote bag taken in the robbery.
Based on the testimony of the witnesses and the evidence, when viewed in the light most favorable to the state, we hold that sufficient evidence existed for the jury to conclude that the defendant was one of the two men who robbed the Family Dollar Store. The testimony of one of the robbery victims specifically refuted the defendant’s contention that Jones |inwas the man who committed the robbery with Tatum. Based upon the strong circumstantial evidence, which included the money trail, the discovery of the defendant in close proximity to items taken during the robbery and his codefendant’s hiding place, and the short period of time in which the events transpired, the jury could have reasonably concluded, to the exclusion of any other reasonable hypothesis of innocence, that the state had successfully negated any reasonable probability of mis-identification and that the defendant was one of the participants in the armed robbery.
This assignment of error is meritless.
NONUNANIMOUS JURY VERDICT
The defendant argues that the application of La. C. Cr. P. art. 782, which allows a nonunanimous jury verdict in hard labor cases, is unconstitutional and that the jury should not have been instructed that a unanimous verdict was unnecessary. In support of this argument, the defendant asserts that Louisiana and Oregon are the only states which have provisions which allow for nonunanimous guilty verdicts.
This argument has been repeatedly rejected by this court. See State v. Williams, 47,146 (La.App.2d Cir.6/20/12), 98 So.3d 880, and State v. Barnett, 46,303 (La.App.2d Cir.5/18/11), 70 So.3d 1, writ denied, 2011-1612 (La.4/13/12), 85 So.3d 1239, and the cases cited therein.
This assignment of error lacks merit.
ADJUDICATION AS FOURTH FELONY OFFENDER
The defendant attacks his adjudication as a fourth felony offender in three pro se assignments of error.
| ^Failure to give written reasons
The defendant alleges that the trial court erred by failing to file written findings as to the habitual offender proceeding. La. R.S. 15:529.1 D(3) requires a trial court to provide written reasons for its habitual offender determination. The trial court’s failure to do so is harmless error because the transcripts of the habitual offender proceedings show oral reasons *1036 and the sufficiency of the evidence presented. See State v. James, 41,069 (La.App.2d Cir.8/23/06), 938 So.2d 1191; State v. Wallace, 46,422 (La.App.2d Cir.8/10/11), 71 So.3d 1142, writs denied, 2011-1962 (La.2/3/12), 79 So.3d 1026, and 2011-1961 (La.2/17/12), 82 So.3d 281.

Right to remain silent

The defendant argues that the trial court erred in failing to advise him that he had a right to remain silent. However, our review of the record reveals that the trial court did indeed advise the defendant that he had a right to “remain silent and ... say nothing.” The court further advised him that “[t]he law says that you can stand mute, say nothing, ...”[5] Failure to specify which convictions used
In this assignment of error, the defendant claims that the trial court erred in failing to specify which of his prior convictions were being used to enhance his sentence.
Following the defendant’s conviction for the instant offense, the state filed a fourth felony habitual offender bill of information against him in which it asserted that he had previously been convicted of three other |12felonies. Detailed information was provided in the bill of information as to these convictions. At the ensuing hearing, after the trial court advised the defendant of his right to counsel and right to remain silent, the defendant consulted with trial counsel. His attorney then informed the court that her client admitted to the three felonies enumerated in the bill of information but not the instant offense. The defendant himself then stated that he admitted the three prior convictions but that he did not admit committing the instant armed robbery. The prosecutor then filed into evidence the exhibits proving the prior convictions; as he did so, he recited into the record details about the crimes which corresponded to those contained in the fourth felony habitual offender bill of information.
The record is clear as to the three prior convictions utilized by the trial court in adjudicating the defendant a fourth felony offender in this matter.
These assignments of error are merit-less.
EXCESSIVE SENTENCE
Following his adjudication as a fourth felony offender, the defendant was sentenced to the mandatory term of life imprisonment without benefit of parole, probation or suspension of sentence. On appeal, defense counsel argues that since the defendant was 30 years old and had a history of only nonviolent drug offenses, that sentence was excessive and served no purpose other than needless imposition of pain and suffering. In his pro se assignment of error, the defendant complains that the trial court did not comply with La. C. Cr. P. art. 894.1.
11 aLaw
Where there is a mandatory sentence, there is no need for the trial court to justify, under La. C. Cr. P. art. 894.1, a sentence that it is legally required to impose. State v. White, 45,915 (La.App.2d Cir.2/2/11), 58 So.3d 493, writ denied, 2011-0373 (La.6/24/11), 64 So.3d 220. Because the sentence imposed for the ha bitual offender adjudication is prescribed by statute, the trial court’s compliance with La. C. Cr. P. art. 894.1 is not required. It would be an exercise in futility for the trial court to discuss the factors enumerated in that article when the court had no discretion in sentencing the defen *1037 dant. State v. White, supra; State v. Winslow, 45,414 (La.App.2d Cir.12/15/10), 55 So.3d 910, writ denied, 2011-0192 (La.6/17/11), 68 So.3d 1033.
Mandatory life sentences required by the habitual offender laws are presumptively constitutional and should be accorded great deference by the judiciary. State v. White, supra; State v. Wallace, supra.
In State v. Dorthey, 623 So.2d 1276 (La.1993), and State v. Johnson, 97-1906 (La.3/4/98), 709 So.2d 672, the supreme court addressed the issue of mandatory sentences in the context of the habitual offender law. The court held that the downward departure from a mandatory minimum sentence may occur in rare circumstances if the defendant rebuts the presumption of constitutionality by showing clear and convincing evidence that he is exceptional, namely, that he is a victim of the legislature’s failure to assign sentences that are meaningfully tailored to the gravity of the offense, the culpability of the offender, and the circumstances of the case.
| ^Furthermore, a trial judge may not rely solely upon the nonviolent nature of the instant or past crimes as evidence which justifies rebutting the presumption of constitutionality. The lack of violence cannot be the main reason for declaring such a sentence excessive. State v. White, supra.

Discussion

The defendant has failed to rebut the presumption that the mandatory sentence is constitutional. He has not proven that he is “exceptional” such that the mandated sentence is too harsh.
As to the defendant’s pro se assignment of error, we note that the trial court was not required to comply with La. C. Cr. P. art. 894.1 while imposing this mandatory sentence. However, before sentencing the defendant, the trial court stated on the record that it had considered that article and indicated that it reviewed the defendant’s presentence investigation report. While it found the penalty harsh, the court observed that the instant offense was “a harsh crime” wherein a weapon was used to take money and frighten the victims. Finding that the defendant was a “menace to our society,” the trial court imposed the mandatory sentence of life imprisonment without benefits.
These assignments of error are merit-less.
ERROR PATENT
The trial court denied the defendant’s posttrial motions on the same day it conducted the habitual offender hearing, wherein the defendant was adjudicated a fourth felony offender and sentenced to a mandatory life sentence. There was no express waiver of the 24-hour delay mandated in |1fiLa. C. Cr. P. art. 873 between such denials and sentencing. However, this is harmless error when no prejudice is shown. See State v. Wallace, supra; State v. Bobo, 46,225 (La.App.2d Cir.6/8/11), 77 So.3d 1, writ denied, 2011-1524 (La.12/16/11), 76 So.3d 1202.
CONCLUSION
The defendant’s conviction and sentence are affirmed.
AFFIRMED.

. Of this amount, $1,922 was recovered and returned to the store.

. Tatum's conviction for armed robbery and sentence were affirmed by this court in State v. Tatum, 47,292 (La.App.2d Cir.8/15/12), 103 So.3d 550.

. He agreed that his observations would be consistent with the heights listed in their police records, which were 6'0" for Tatum and 6'4" for Jones.

. However, the inexactitude of height estimates was demonstrated by Ms. Dilley's guess that defense counsel was 5'2" or 5'3". Defense counsel stated that she was, in fact, 5 and wearing 3 1/2-inch heels.

. In fact, we note that the defendant quoted the latter statement in his brief.